# GEORGE v. FORD.*

FRAUDULENT TRANSFERS; CORPORATIONS; TRUSTS AND TRUSTEES; EQUITY;
CANCELATION OF INSTRUMENTS; LIMITATION.

1. The purchase of an interest in a corporation is not voidable at the
   instance of the seller, merely because the purchaser at the time was

---

*Fraud.*—As to liability of officer for fraud in buying or selling stock
of company, see note to *Boulden* v. *Stilwell,* 1 L.R.A.(N.S.) 258; as to
jurisdiction of equity to cancel instrument on ground of fraud, see note to
*Fred Macey Co.* v. *Macey,* 5 L.R.A.(N.S.) 1036.

manager and director of the corporation, and the seller was a director and stockholder.

2. Where a director and active manager of a corporation, and owner of five sixths of its capital stock, desires to procure a contract from a fellow director who owns the remaining one sixth, and who has taken no active part in the management, and who relies upon the manager to keep him informed upon all matters relative to the operations and finances of the corporation, by which contract the manager is to be authorized to dispose of the stock of the other for a specified sum, payable partly in cash, partly in notes made or indorsed by the manager, and partly in the stock of another corporation, and is to be constituted attorney in fact to carry out the transaction, it would seem to be the moral and equitable duty of the manager, when dealing with the other, to disclose to him the material facts of the situation.

3. Where a director and active manager of a corporation, and owner of five sixths of its capital stock, alarms a fellow director who owns the remaining one sixth, by false statements of the financial condition of the corporation, with intent to induce him to part with his holdings at a grossly inadequate price, and procures from him a contract to sell for such price, payable partly in cash, partly in notes made or indorsed by the manager, and partly in the stock of a corporation organized by him for the purpose of acquiring the assets of the other corporation, and constituting the manager attorney in fact to carry out the transaction, and in consummating the contract, the manager secretly takes title to the stock himself, such facts shows such a case of fraud and deceit as to entitle the seller to relief against the buyer, aside from any question as to the relations between the parties at the time of the transaction.

4. Although the subject-matter of a suit belongs in a general class over which courts of equity ordinarily take jurisdiction by virtue of the superiority of their remedies, that does not necessarily determine the question in a particular case, for notwithstanding the classification, the jurisdiction does not exist if it appear from the case presented that a court of law is competent to take cognizance of it and afford a plain, adequate, and complete remedy. In every such case the defendant is entitled to his constitutional right of trial by jury.

5. In order that the remedy at law shall be plain, adequate, and complete, it must be as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.

6. In so far as one defrauded by another seeks to recover pecuniary damages for a deceit practised upon him, he is not entitled to relief in equity, for such damages can be assessed in an action of deceit at law.

7. A prayer for cancelation on the ground of fraud, of an agreement authorizing the manager of a corporation to sell out the holdings of one of its directors, will not give jurisdiction of the subject-matter to a court of equity, where the sale pursuant thereto has been completed, and the mere cancelation of the agreement will serve no useful purpose.

8. A prayer that the defendant, who, by misrepresentations obtained authority to sell certain holdings of the plaintiff in a corporation, and secretly purchased them himself, be declared a trustee for plaintiff, will not furnish a ground of equitable jurisdiction, where there is no attempt to fasten a trust upon any particular piece of property into which the funds of plaintiff could be traced.

9. Where the owner of five sixths of the capital stock of a corporation fraudulently procures a contract from the owner of the remaining one sixth, whereby the former is authorized to sell the stock of the latter for a specified price, payable partly in cash, partly in promissory notes made or indorsed by him, and partly in the stock of another corporation, and whereby he is constituted attorney in fact for the seller to carry out the sale, and he pays the money, gives the notes, and takes title to the stock himself, he is liable to the seller for all profits made by him in the transaction, which profits can be recovered by the seller as damages in a suit in equity, if their ascertainment will involve the examination of corporate transactions of a complex nature, necessitating a wide range of evidence, for which a court of equity is peculiarly competent, and which duties a jury could not satisfactorily perform.

10. Without regard to the analogy of the statute of limitations, a plaintiff asking a remedy in equity for fraud must exercise his right within a reasonable time after the discovery of the fraud. (Citing *Pryor* v. *McIntire*, 7 App. D. C. 417.)

11. Laches, to afford relief against actual fraud, must not only consist of delay, but a delay that has worked disadvantage to the opposing party. If there have been in the meantime no change of title, no great rise in the value of property involved, no loss of material evidence; in general, no intervention of substantial equities, it is not of controlling importance that a right shall have been pressed with promptness. Courts of equity will look with some indulgence upon mere delay from which no material injury has accrued.

No. 2194. Submitted December 7, 1910. Decided February 6, 1911.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, sustaining a demurrer to an amended bill of complaint, and dismissing the bill.                                    *Reversed.*

GEORGE *v.* FORD.

. The COURT in the opinion stated the facts as follows:

This is an appeal from a decree dismissing a bill for the rescission of certain transactions between the plaintiff, Lewis Dudley George, and defendant, Azel Ford, for an accounting, and the recovery of damages sustained through the fraudulent misrepresentations and conduct of the defendant, Azel Ford.

Demurrer having been sustained to the original bill, filed December 3, 1909, an amendment was made, to which a demurrer was also sustained, and the plaintiff declining further to amend, the bill was dismissed.

The substantial allegations of the amended bill are the following: Plaintiff is a resident of Caroline county, Virginia, and defendant of the District of Columbia. In the year 1890, plaintiff, one B. B. Wright, and J. R. Beaty formed a partnership, by the name of J. R. Beaty & Company, to conduct a lumber business in West Virginia, and purchased valuable timber lands in that State. In 1896 the three partners aforesaid joined with defendant Ford in the organization of a corporation under the laws of West Virginia, called the Beaty Lumber Company. The authorized capital stock was $300,000, divided into 3,000 shares of $100 each, and in exchange therefor the corporation acquired the holdings of J. R. Beaty & Company and some other property. 2,187 only of said shares were subscribed for and issued by January 6, 1897. By January 24, 1899, plaintiff was the holder and owner of 100 shares of said stock, and on that date 59 additional shares were ordered issued to him, but only 50 were ever actually issued. At this time the corporation bought the interest of J. R. Beaty, and the stock holdings of certain other subscribers were surrendered, and B. B. Wright, defendant, and plaintiff became the only persons then substantially interested in the stock of said corporation. Prior to November 18, 1899, defendant purchased the stock of said Wright. On December 21, 1899, plaintiff owned, and was entitled to, at least one sixth of the entire subscribed stock, although 150 shares had been actually issued to him, and defendant was entitled as owner to the re-

maining five sixths of the shares of said corporation, about
five of which were held in the names of certain of his employees
and relations, to enable them to qualify as directors.   Both
complainant and defendant were directors, and had been such
since 1896.   Wright was nominally president of the board of
directors, but was not acting, as he had sold his stock.   Defend-
ant was manager of the corporation.   On information and be-
lief, certificates sufficient to bring the number of shares of
plaintiff to one sixth of the entire subscribed stock had been
made out, ready for delivery to him, though not detached from
the stock book, which book came into defendant's possession,
and said shares were never delivered.   He repeatedly asked
defendant for their delivery, prior to December, 1899, and was
told they could not be delivered until a loan of the corporation
for $50,000 for which the corporation stock had been hypothe-
cated, should be paid.   Said loan was evidenced by bonds se-
cured by deed of trust on property of the corporation, and
would not mature until 1907.   Plaintiff was at the same time
owner of a one-sixth interest in the Glade Creek & Raleigh
Railroad Company,—a lumber road,—in which defendant was
also largely interested.   For nine months or more, prior to
December 21st, 1899, plaintiff took no active part in the man-
agement of said Beaty Lumber Company, and resided a long
distance from the place—Raleigh, West Virginia—where its
operations were carried on.   Defendant, during said period,
spent a great part of his time at the corporation's place of busi-
ness, and had the actual management of the same.   Plaintiff,
as defendant well knew, relied upon him to inform him of the
operations and affairs of the corporation and its financial con-
dition.   On December 21, 1899, plaintiff and defendant met
by appointment in Richmond, Virginia.   Defendant then in-
formed plaintiff that the corporation was in a bad way finan-
cially, was losing ground, that its best leasehold—timber on
lands of Logan W. Bullitt and others—was about to be wrested
from it by the Raleigh Lumber Company.   That the best thing
to do was for the Beaty Lumber Company to sell out all of its
assets to the new company, and that he, defendant, would un-

dertake to make a sale to said new company, if authorized. He further stated that in case .the said Raleigh Lumber Company should succeed, as he, defendant, believed it would, in wresting from the Beaty Lumber Company its lease of the aforesaid lands, the stock of the Beaty Lumber Company would not be worth 10 cents on the dollar, and urged plaintiff to consent to said sale before matters grew worse. He further stated that he desired the interest of plaintiff should be taken care of in the same way as his own, and that a sale should be made on the basis of exchange of stock of· the Beaty Lumber Company. That the latter stock would be worth par, and in the opinion of defendant, the stock of that company was worth ten times the actual value per share of the Beaty Lumber Company. That said statements were false and misleading in material respects, but plaintiff believed them to be true, and defendant made said statements fraudulently, intending complainant to accept them as true, and for the purpose of inducing him to consent to a sale of his interest in the Beaty Lumber Company upon certain terms which were evidenced by an instrument in writing, which defendant then and there prepared and induced complainant to sign. The said agreement, and powers of attorney to carry it into effect, reads as follows:

Richmond, Va., December 21st, 1899.

Memorandum of an agreement made this, the 21st day of December, 1899, between L. D. George, of the one part, and Azel Ford, of the other part, witnesseth: That the said George does hereby agree that said Ford may sell the interest of said George in the Beaty Lumber Company of one sixth of the capital stock of said company and $500 interest of said George in the Glad Creek & Raleigh R. R. on the following terms and for the following named amounts and full-paid stock in the hereinafter named company, to wit: $2,500 cash on or before January 15th, 1900; $2,500 on or before May 15th, 1900, which sum must be represented by a note, to be either made by or indorsed by said Ford, and stock full paid at par to the amount of ten thousand ($10,000) dollars in the Raleigh Lumber Com-

pany, which company has a lease under which it will manufacture and sell the timber on the property controlled by the Raleigh Coal Land Association, which property lies on Piney creek, in Raleigh county, West Virginia, and particularly described in said lease, amounting in area from 25 to 30 thousand acres.

It is understood that if the above-named payments are not made on or before the 15th January, 1900, this agreement to become null and void.

Witness our hands and seals this 21st day of December, 1899.

(Signed)                         L. D. George.    (Seal.)
    "                            Azel Ford.    (Seal.)


                         Richmond, December 21, 1899.

I hereby appoint Azel Ford my attorney in fact to do all things requisite and necessary to carry out a contract for the disposition of certain interests owned by me, as set out in said writing dated 21st of December, 1899.

Witness my hand and seal this, the 21st, day of December, 1899.

(Signed)                         L. D. George.    (Seal.)


Should Azel Ford succeed in carrying out an agreement for the sale of my interests in the Beaty Lumber Company and the Glade Creek & Raleigh Railroad Company, I hereby agree to take $10,000 for the amount of stock I hold in the Raleigh Lumber Company, provided he secures me this amount in cash within one year, with interest from January 15th, 1900.

Witness my hand and seal this, the 21st, day of December, 1899.

(Signed)                         L. D. George. (Seal.)


Plaintiff has since been informed and believes that the financial condition and business prospects of the Beaty Lumber Company were much better than represented by defendant, and that property and rights of the company were of great value,

to wit: $300,000 over and above the encumbrance of $50,000 all of which was then well known to the defendant. Defendant further represented at said meeting that he was acting in the best interest of the Beaty Lumber Company, and had no interest in said Raleigh Lumber Company; that no sale by the Beaty Lumber Company to the other had been agreed upon, and that he proposed to negotiate a sale if authorized by plaintiff. That on the — day of January, 1900, defendant represented to him that he had effected a sale of plaintiff's interest, on the terms authorized by the agreement aforesaid, and plaintifl, through a Richmond bank, delivered to defendant his certificate for $15,000 of the Beaty Lumber Company stock, and received from the defendant the consideration called for by said agreement; namely, $10,000 in Raleigh Lumber Company stock, $2,500 in money, and a note for $2,500, which was subsequently paid. That six years elapsed before plaintiff discovered that he had not been treated fairly, but had been defrauded of his said stock. Some time in the year 1906 plaintiff was notified by the president of the Raleigh Lumber Company that a deal was on foot to sell the stock of said company to some Northern capitalists for a good price, and that he should be on hand at the company's office in Raleigh, West Virginia, in case said deal should be made. In May, 1906, plaintiff, accompanied by his attorney, met the said president and other officers at said office, and was informed that no stock had been issued to plaintiff originally, and that the 100 shares that stood in his name had been transferred to him by defendant as a part of a very large issue of stock that had been made to defendant. Plaintiff then asked the defendant for an explanation, and also about his certificates for additional shares of the Beaty Lumber Company stock, and was informed by defendant that he, plaintiff, had sold to him all of his stock in the Beaty Lumber Company for the sum of $5,000 and the 100 shares of stock in the Raleigh Lumber Company; and said he could show him the contract to that effect, which was in his office in Washington, District of Columbia. Believing that he had been defrauded, plaintiff, with his attorney, examined

the records of the Raleigh Lumber Company, discovering that
it had been incorporated November 15th, 1899. He also dis-
covered that negotiations were in progress on November 18,
1899, on which day a meeting of the directors of the Beaty
Lumber Company, of which plaintiff had no notice, was held.
Said meeting passed a resolution authorizing the sale and
transfer of all of the property, good will, and bills receivable
to the Raleigh Lumber Company. But four directors were
present at said meeting, namely, Ewart, Anderson, Wilson, and
Puckett. Ewart was defendant's attorney, Wilson his book-
keeper, and Puckett was cashier of defendant's bank at Hinton,
West Virginia. That while the consideration stated in said
resolution was the assumption by the purchasing company of
all the indebtedness of the selling company, the true considera-
tion, including the above, was the delivery and issuance to
defendant, who, in said sale, acted as the owner of the Beaty
Lumber Company, of a large number of the shares of stock
of the Raleigh Lumber Company; and it appears by the minutes
of said company that by resolution adopted November 29th,
1899, it agreed to purchase of defendant, in consideration of
4,995 shares of the capital stock of the Raleigh Lumber Com-
pany, all of the property and assets of the Beaty Lumber
Company, the stock and bonds of the Glade Creek & Raleigh
Railroad Company (of which stock plaintiff owned one sixth),
and defendant's mill and lumber at Piney, West Virginia.
That said sales were consummated in accordance with said
resolutions, and the defendant received 4,995 of the 5,000
shares of authorized capital stock of the Raleigh Lumber Com-
pany on January 23, 1900, a stockholders' meeting of the
Beaty Lumber Company was held, at which defendant, who
was the president of said company, was present, but plaintiff
was not, having had no notice of the same. Said meeting
passed a resolution confirming the sale that had been made to
the Raleigh Lumber Company. Until the foregoing informa-
tion was derived as aforesaid, complainant had believed that
defendant had shared in the transfer to the Raleigh Lumber
Company with plaintiff in the same proportion in which they

held stock in the Beaty Lumber Company,—namely, one sixth to plaintiff, and five sixths to defendant. He thereupon made the claim that a considerable portion of the stock issued to defendant should have been issued to him, and he stated to the president of the Raleigh Lumber Company that he intended to take legal steps to recover so much of the stock issued to defendant as should have been issued to him. "That he was dissuaded from taking such action by representations of the president of the Raleigh Lumber Company, George H. Smith, to the effect that the Raleigh Lumber Company was on the eve of making an advantageous sale of its stock and lumber business to some Northern capitalists, and that any action brought at that time would result in terminating unfavorably the negotiations for said sale, which were about completed, and he advised plaintiff not to bring action at that time, but to allow the sale to be made, because it was to the interest of all of the stockholders of the Raleigh Lumber Company, including plaintiff; and he advised plaintiff at the same time, that any action which plaintiff would bring in the premises should be properly brought against the defendant for receiving said stock and not accounting therefor, rather than against the said company for issuing, or causing to be issued, said stock to defendant; and that said suit against defendant could be prosecuted by plaintiff as well after the sale of the stock and business of the Raleigh Lumber Company as before said sale."

Plaintiff, in May, 1906, asked defendant to adjust the matter, who requested plaintiff, with his attorney, to meet him in the city of Washington. Plaintiff made two engagements to meet defendant in Washington to talk over matters, both of which defendant failed to keep. April 11, 1907, defendant wrote plaintiff, expressing regret at not being present to keep his engagement, and proposing to make a date later at defendant's expense. In the meantime, the deal above contemplated having fallen through, on December 22, 1906, another deal was made with the Wm. Ritter Lumber Company, whereby the stock of said Raleigh Lumber Company was transferred to Wm. Ritter, president of the former company,

for $337,500, the Raleigh Company retaining its interest in the real estate and the Glade Creek & Raleigh Railroad Company, and in certain personal property conveyed to Geo. H. Smith for the benefit of the stockholders of the said Raleigh Lumber Company. Plaintiff did not object to this transfer, and signed the papers, leaving the matters at issue between him and the defendant to be determined later, as agreed upon between them. Later, the Glade Creek & Raleigh Railroad was sold to the Chesapeake & Ohio Railroad Company for $100,000. About the month of April, 1907, when the officers of the Raleigh Lumber Company were in Richmond, negotiating said sale; plaintiff met the defendant, and asked him to produce the contract which he claimed to have with complainant, which the defendant did, and delivered a copy of the same to him. That engagement was again made to meet in Washington, which defendant failed to keep. On May 10th, 1907, plaintiff wrote defendant, repudiating the said contract, and again he requested defendant to account to him in June, 1909, which was refused. It is further alleged that defendant was in full control of the Raleigh Lumber Company by virtue of the 4,995 shares of capital stock issued to him after transferring the 100 shares before mentioned to complainant, until January 2, 1900, when he transferred 2,295 shares to Logan M. Bullitt, 250 shares to Thomas Robb, 150 shares to William Lang, 155 shares to T. J. Morgan, 300 shares to Harry Allen, and 50 shares to Charles F. Smith; retaining 1,695 shares in his own name, which was increased to 1,700 shares by subsequent acquisitions. Plaintiff is informed and believes that the assets of the Beaty Lumber Company and the stock of the Glade Creek & Raleigh Railroad, in all of which plaintiff had a one-sixth interest, constituted and were the principal things and matters of value in exchange for which said 4,995 shares had been issued to defendant, and that plaintiff's one-sixth interest was of much greater value than the 100 shares of stock and the $5,000 received by him from defendant. Defendant is liable to account to complainant for all the money and property on account of plaintiff's interest received by him in said transaction, being en-

titled to credits in the said sum of $5,000 and the value of the 100 shares of stock aforesaid, with legal interest thereon, which plaintiff is ready and willing shall be done.

Defendant, in negotiating said sale, occupied a relation of trust to plaintiff by reason of his being a director in, and the active manager of, and the owner of a majority of the stock of, said Beaty Lumber Company; and also by reason of his being complainant's agent to negotiate the sale of his interest in said Beaty Lumber Company to the best advantage. By way of further explanation of his delay, plaintiff alleges that while he made certain discoveries of fraud in May, 1906, it was not until April, 1907, that he became aware of the falsity of the defendant's statement that the agreement of December, 1899, heretofore set out, was a contract of sale by complainant to defendant. That while his recollection of said agreement was clear, he had retained no copy of the same; still, inasmuch as defendant represented the same as a contract of sale to him, plaintiff was induced to defer action until he could see said contract in defendant's possession; and it was not until April, 1907, that the defendant produced the same. That as the facts were concealed from him by defendant, plaintiff's discovery of the fraud dates from April, 1907. Other allegations are to the effect that after this discovery, defendant delayed plaintiff's action by his engagements to meet and talk over the matter; that he was unable for a considerable period to employ local counsel to represent him. That after the agreement of sale to the Ritter Company, as before recited, certain retained property and assets passed into the hands of George H. Smith, as trustee, who has collected and converted into money a large part of said property. That he has distributed a large amount to defendant, among others entitled, which defendant should account for to plaintiff for such proportion as is due him. Said Smith is not made a party to the bill because he is a nonresident. The plaintiff executed the contract of sale to said Ritter because it was to the interest of all the stockholders of the Raleigh Lumber Company, and because he was advised that by so doing he would not in any manner impair or prejudice

his right to have a full settlement with, and accounting by, defendant, because he relied upon the assurance of the president of the Raleigh Lumber Company, heretofore stated. Answer under oath to the bill is expressly waived.

The prayers are for a decree requiring the defendant to account for all stock and proceeds of the sales of stock in the two lumber companies and in the Glade Creek & Raleigh Railroad Company which rightfully belonged to plaintiff, or which should have been paid or issued to him, but which came into the hands and control of defendant, and all profits and dividends which the defendant has received on said stock of the Raleigh Lumber Company or Geo. H. Smith, trustee, or any other source; and that after allowing defendant all proper credits, a decree for the balance may be rendered for plaintiff. Or that, in the alternative, the court will, by its decree, direct the defendant to deliver up for cancelation the contract of December 21, 1899, and the power of attorney thereto appended; and that the sale made to himself by defendant under color of said contract be rescinded; and that the defendant be held as trustee of the plaintiff for all stock and proceeds of stock and dividends which he received from the Raleigh Lumber Company and any other source as a result of the sale of the said interests and stock holdings of plaintiff; and so far as practicable the court will restore plaintiff to his former status by requiring defendant to transfer and deliver to him such stock as he may have in his possession or control which rightfully belongs to the plaintiff; accounting as trustee for the residue after allowing defendant credit for all proceeds of stock, money, etc., which plaintiff has received as the result of the transfer to him of the 100 shares of stock of the Raleigh Lumber Company and of the $5,000 paid. That the matters be referred to the auditor, and plaintiff have such other and general relief as he may be entitled to.

The defendant entered a demurrer upon the following grounds, briefly stated:

1. That the facts alleged do not show a case for relief.
2. The bar of laches.
3. Want of jurisdiction in equity.

Mr. *George Francis Williams* and Mr. *Wm. E. Ennis* for the appellant.

Mr. *Charles Cowles Tucker*, Mr. *J. Miller Kenyon* and Mr. *Henry B. F. McFarland* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first ground of the demurrer is not well taken. In our opinion the bill, though unnecessarily elaborate in some parts and lacking in specification in others, sets out facts showing fraudulent misrepresentations by defendant in material respects. That defendant was manager of the Beaty Lumber Company and plaintiff a director and stockholder thereof did not necessarily constitute such a fiduciary relation between them as would render the transaction of December 21, 1899, voidable for that reason alone. *Smith* v. *Hurd*, 12 Met. 371–384, 46 Am. Dec. 690; *Crowell* v. *Jackson*, 53 N. J. L. 656, 23 Atl. 426; *Hooker* v. *Midland Steel Co.* 215 Ill. 444–451, 106 Am. St. Rep. 170, 74 N. E. 445; *Krumbhaar* v. *Griffiths*, 151 Pa. 223, 25 Atl. 64. But the facts alleged, substantially, that plaintiff, though a director, took no active part in the management, and relied, as the defendant knew, upon him as manager and friend and fellow shareholder to keep him informed of all matters relating to the operations and financial condition of the corporation. That under these circumstances he sought plaintiff, to apparently induce him to constitute defendant his agent to sell and pass title to his stock and interests, would seem to have imposed not only a moral but an equitable obligation upon him, when dealing with the plaintiff, to disclose to him the material facts of the situation. *Oliver* v. *Oliver*, 118 Ga. 362, 45 S. E. 232; *Stewart* v. *Harris*, 69 Kan. 498, 66 L. R. A. 261, 105 Am. St. Rep. 178, 77 Pac. 277, 2 A. & E. Ann. Cas. 873; *Tate* v. *Williamson*, L. R. 2 Ch. 55, 15 L. T. N. S. 549, 15 Week. Rep. 321.

The liability of the defendant does not rest upon this proposition, however; for, not content with the concealment of the

facts and his opposing interests, the defendant misrepresented the situation, and by his false statements alarmed the plaintiff as to the financial condition of the corporation, with the intent to induce him to part with his holdings for a grossly inadequate consideration. Instead of the actual purchase which he intended to accomplish, and which, if disclosed, might have aroused the suspicion of the plaintiff, and prevented the success of his scheme, the defendant wrote an instrument which made him, not the purchaser, but the agent, for sale; and obtained a power of attorney to carry it into execution. Instead of finding a purchaser at the price named, he secretly took the title to himself, and proceeded to carry out the contemplated scheme for the organization of the Raleigh Lumber Company and its acquisition of the holdings of the Beaty Lumber Company. This latter scheme could have been carried out as well by fair dealing with plaintiff, and the only conceivable object of the deception was to profit by plaintiff's loss. Aside, then, from any question as to the relations between the two parties at the time of the transaction, the facts alleged show a case of actual fraud and deceit, entitling plaintiff to relief, **if** his demand has been prosecuted in the proper forum and without inexcusable delay.

What has been said of the transactions between the parties is necessarily based upon the assumed truth of the allegations of the bill. If they do not truly present the facts, it is the fault of the defendant, who preferred to demur rather than to answer and clear himself of the imputation of fraud.

2. Whether the case presented by the allegations of the bill is one cognizable in equity is a serious question. It was raised by the demurrer, though not the first ground thereof, as it should have been, and must be determined on its merits. Although the subject-matter of the suit belongs in a general class, over which courts of equity ordinarily take jurisdiction by virtue of the superiority of their remedies, that does not necessarily determine the question in the particular case, for, notwithstanding the classification, the jurisdiction does not exist if it appears from the case presented that a court of law

is competent to take cognizance of it and afford a plain, ade-
quate and complete remedy. In every such case the defendant
is entitled to his constitutional right of trial by jury. *Hipp* v.
*Babin,* 19 How. 271–278, 15 L. ed. 633–635. But that this
remedy at law shall be plain, adequate, and complete, it must
be as practical and efficient to the ends of justice and its prompt
administration, as the remedy in equity. *Boyce* v. *Grundy,* 3
Pet. 210–215, 7 L. ed. 655–657.

This constantly recurring question of jurisdiction in equity
was carefully re-examined in a case on which the appellee
strongly relies (*Buzard* v. *Houston,* 119 U. S. 347–352, 30 L.
ed. 451–454, 7 Sup. Ct. Rep. 249). There, as here, a fraudu-
lent contract had been obtained, and there was a prayer for
its rescission; but it was plain that a judgment for pecuniary
damages, under the particular facts in the case, would adjust
and determine all the rights of the parties, and was the only
redress obtainable. The court said: "In cases of fraud or
mistake, as under any other head of chancery jurisdiction,
a court of the United States will not sustain a bill in equity
to obtain only a decree for the payment of money by way of
damages, when the like amount can be recovered at law in an
action sounding in tort, or for money had and received." In
so far as the plaintiff, in the case at bar, seeks to recover
pecuniary damages sustained through the deceit practised in
obtaining and misusing the agreement of December 21, 1899,
his case comes within the rule enounced in *Buzard* v. *Houston,*
supra, for such damages would be assessed in an action of
deceit at law. The same may be said of the prayer for the
cancelation of the said agreement. It could serve no useful
purpose to have the agreement canceled. The effect of it, so
far as it passed plaintiff's interests in the Beaty Lumber Com-
pany, cannot now be impaired; nor does the plaintiff seek to
do so. To that extent it has been practically ratified by him.
Moreover, it would be treated as voidable at law, in an action
of deceit, by reason of its fraudulent procurement. Nor can
the prayer that defendant be declared a trustee for plaintiff
itself furnish a ground of jurisdiction; for there is no attempt

to fasten a trust upon any particular piece of property into which the funds of plaintiff may be traced. The stock and interests of the plaintiff, as well as the defendant, in the Raleigh Lumber Company, passed by the sale of the stock and holdings of that company, in which plaintiff acquiesced. All that can be accomplished in equity is an ascertainment and recovery of the damages sustained by the plaintiff. Unless this can be done as readily and accurately in an action at law, there is jurisdiction in equity. In *Buzard* v. *Houston,* supra, there was no difficulty in this respect: having found deceit practised, a jury could as readily and accurately compute the damages sustained as could a master in chancery or an auditor, and more promptly.

In the case at bar, the defendant is not an express trustee against whom, for that reason alone, a bill for an account would lie. But the relations between the two were of a fiduciary nature. The defendant, possessing the confidence of the plaintiff, and knowing that the latter relied upon him for information, and reposed confidence in his discretion and fairness, sought to act as his agent for sale, and procured a contract and power of attorney to that end. Acting under this agency, however procured, he was bound to act in the interest of his principal, and could not make a profit out of the relation. Any profits so made he would hold in trust for the plaintiff. The ascertainment of these profits, which constitute the damages sustained by the plaintiff, is by no means a simple matter, of easy computation. The following facts are involved: The actual value not only of the stock held by plaintiff in the Beaty Lumber Company on December 29, 1899, but also the value of his actual interest, at the time, in the assets of that corporation and the Glade Creek & Raleigh Railroad; the value of the interest that plaintiff was fairly entitled to in the stock of the Raleigh Lumber Company under its purchase of the interests of the Beaty Lumber Company; and also the value of the interest to which plaintiff was entitled in the assets of the Raleigh Lumber Company, not sold, but retained for the benefit of the former stockholders thereof. Against these are to be charged

the money actually received by plaintiff under the agreement of December 21, 1899, as well as the value of the stock of the Raleigh Lumber Company, received under that agreement, and such amounts as he may have received from the retained assets of the Raleigh Lumber Company in the hands of the trustee, Smith. Aside from the trust raised by the conduct of the defendant, the account of which is to be taken, the ascertainment and adjustment of this account involves the examination of books and accounts, and the investigation of corporate transactions of a complex nature, necessitating a wide range of evidence also, for which a court of equity is peculiarly competent, and these duties a jury could not satisfactorily perform. In such cases a court of equity will always take jurisdiction. *Fowle* v. *Lawrason,* 5 Pet. 495–503, 8 L. ed. 204–207; *Morgan* v. *Beloit,* 7 Wall. 613–618, 19 L. ed. 203–205; Pom. Eq. Jur. sec. 1421; Bispham, Eq. p. 661, ¶ 484.

3. It remains to consider whether the demurrer was properly sustained on the ground of laches.

It is clear from the recitals of the bill that the plaintiff was under no equitable obligation to bring his suit until after the receipt of the first information, in 1906, of the wrong that had been done him. Some time elapsed while he was investigating the sources of information, and further delay was caused by the representations of the defendant. Consequently plaintiff's delay began about April, 1907. Within three years from that date his bill was filed. Three years is the period fixed for the bringing of such an action at law. Code, sec. 1265 [31 Stat. at L. 1389, chap. 854]. Without regard to the analogy of the statute of limitations, a plaintiff asking a remedy for fraud must exercise his right within a reasonable time after the discovery of the fraud.

As was said in a former case (*Pryor* v. *McIntire,* 7 App. D. 417–430): "The familiar maxim that 'equity aids the vigilant' is a typical doctrine of equity jurisprudence, and in its application best illustrates the beneficient spirit of its administration. The rule is neither arbitrary nor technical; but capable of rigid contraction on the one hand and of wide ex-

pansion on the other, in the sound discretion of the chancellor, according to the special circumstances of each particular case. This idea is well expressed by Mr. Justice Brewer in the following words: 'The length of time during which the party neglects the assertion of his rights, which must pass in order to show laches, varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the right such, that it would be inequitable to permit the plaintiff to now assert them.' *Halstead* v. *Grinnan,* 152 U. S. 412, 416, 38 L. ed. 495, 496, 14 Sup. Ct. Rep. 641."

If the situation of the parties has been materially changed during the delay,—for example, if there has been a great rise in the value of the property involved, or the defendant has been influenced by the delay to make valuable improvements,— if there has been the death of the defendant or witnesses, and the probable loss of material evidence, and the like,—then, if it shall appear that the plaintiff, with full knowledge of his rights, or the means of such knowledge at hand, has slept upon them, it would be inequitable, under such circumstances, to entertain his suit. On the other hand, where no such conditions have arisen—no such equities intervened—mere lapse of time that is not so excessive as to warrant a presumption of their existence ought not to bar relief where actual fraud has been committed. *McIntire* v. *Pryor,* 173 U. S. 38–54, 43 L. ed. 606–612, 19 Sup. Ct. Rep. 352; and cases there reviewed.

To bar relief against actual fraud, laches must not only consist of delay, but of delay that has worked a disadvantage to the opposing party. If there have been, in the meantime, no change of title, no great rise in the value of the property, no loss of material evidence, in general, no intervention of substantial equities, it is not of controlling importance that a right shall have been pressed with promptness. So great is its abhorrence of fraud and the violation of fiduciary obligations,

that a court of equity will look with some indulgence upon
mere delay, from which no material injury has occurred.

According to the allegations of the bill in this case, which
are admitted by the demurrer, a great fraud has been perpetrat-
ed upon the plaintiff by one in fiduciary relation with him.
The delay has not been excessive. There are no changes shown
in the conditions and relations of the parties, and no intervening
equities whatever. The acquiescence of the plaintiff in the
sale of the stock and assets of the Raleigh Lumber Company,
and his willingness to profit by that sale, have been urged as
reasons why he should be denied relief. We see no force in
this contention. Failure to bring a suit that might have pre-
vented that sale, and acquiescence in it, was not unreasonable
conduct on the part of the plaintiff, under the circumstances.
It could not impair his right to relief against the defendant,
who was presumably benefited by the transaction. It did not
alter his relations with the plaintiff, nor prejudice his defense
against the plaintiff's demand.

We are of the opinion, therefore, that the allegations of the
bill disclose no such unreasonable delay on the part of the
plaintiff as should bar his right to relief.

The decree will be reversed, with costs, and the cause re-
manded for further proceedings not inconsistent with this
opinion.                                      *Reversed.*

A motion by the appellee for a rehearing was denied, Mr.
Chief Justice SHEPARD delivering the opinion of the Court:

The motion for rehearing is on the single ground of error
in our conclusion that the equity court had jurisdiction in this
case.

In support of this contention, counsel strongly rely upon a
decision of the Supreme Court of the United States, not here-
tofore brought to our attention. *United States* v. *Bitter Root
Development Co.* 200 U. S. 451, 50 L. ed. 550, 26 Sup. Ct.
Rep. 318.

Upon a careful consideration of that case we see no reason

to change **our** opinion. While each case is governed by the same principle, namely, that a court of equity has no jurisdiction where there is a plain, adequate, and complete remedy at law, the facts to which it is applied are essentially different.

As stated by Mr. Justice Peckham in the first paragraph of that case (200 U. S. p. 471) : "Although there is a liberal use in the bill in this case of averments in regard to fraud, conspiracy, and violation of trust, of which the pleader avers the defendants have been guilty, in various ways, yet, upon a careful examination of the pleading itself, and the actual facts therein stated, we concur in the view of the courts below, that the action is really nothing but an action of trespass or trover to recover damages sustained by the complainant by reason of the wrongful cutting, carrying away, and conversion of the property of the complainant, consisting of timber on the land mentioned in the bill; and for the wrong thus done we think it clear that the complainant has a plain, adequate, and complete remedy at law, and consequently the court has no jurisdiction of this bill in equity."

As in the case at bar, the equity jurisdiction in that case was also claimed on the ground of the necessity for an accounting. Answering the contention on this ground, Mr. Justice Peckham said: "There are no accounts between the parties. The cause of action is one arising in tort, and cannot be converted into one for an account. The case made is a plain trespass, for which the defendants are liable in damages. Or it might be termed an action in trover, as stated. Whatever books, if any, defendants may have kept, showing the amount and location of the timber cut, and its value, can be perfectly well obtained by an inspection of these books in an action at law."

The facts relied on for the taking of an account in the case at bar are very different. As they appear fully in the opinion heretofore delivered, there is no need to restate them. The motion is denied.                        *Rehearing denied.*