Walter L. KING, Sr., et ux., Appellants,

v.

KITCHEN MAGIC, INC., et
al., Appellees.

No. 12351.

District of Columbia Court of Appeals.

Argued Feb. 14, 1978.

Decided Sept. 14, 1978.

Leonard C. Collins, Washington, D. C., for appellants.

Rex K. Nelson, Washington, D. C., for appellees.

Before KERN, NEBEKER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This is an appeal from the granting of a motion for summary judgment in favor of appellees (defendants below). We conclude that the trial court erroneously ruled that the entire action was barred by the statute of limitations. Accordingly, we set aside the ruling of the trial court in part, and remand the case with instructions to rule on appellees' motion for summary judgment in accordance with the principles enunciated in this opinion.*

On July 14, 1967, appellants, Walter King and his wife, signed a contract with Kitchen Magic, Inc. The contract provided for the construction of a brick retaining wall on the Kings' property at a cost of $1,941.84. To secure payment, a deed of trust and a trust note on the Kings' home were executed in that amount. The Kings allege that a representative of Kitchen Magic had assured them, prior to the signing of the contract, that the cost of the wall would be approximately $850. In reliance on that assurance, the Kings signed the contract even though the price had been left blank. Subsequently, the Kings discovered they were obligated to pay $1,941.84. On October 4, 1967, they mailed written notice to Kitchen Magic outlining a claim of fraud and contending that they knew nothing of a deed of trust or a trust note. They offered to pay $800 at six percent interest provided the deed of trust was released. Apparently this offer was rejected.

Although the wall was constructed, the Kings made no payments on the note. After several demands for payment, Seaboard Enterprises, Inc., by then the holder of the note, instituted foreclosure proceedings. Approximately nine years had elapsed from the date the contract and trust agreement were entered into (July 14, 1967) to the date on which a notice of foreclosure was sent to the Kings (May 24, 1976). On July 9, 1976, the Kings, alleging fraud, filed suit seeking to nullify the purported lien against their home, and also demanding punitive damages. (The Kings entitled their action "Complaint for Damages for Fraud and to Expunge Deed of Trust".) A temporary restraining order preventing the foreclosure sale was issued on July 12, 1976, which was the scheduled sale date.

On February 14, 1977, the trial court entered summary judgment in favor of Kitchen Magic, ruling that since the alleged fraud had been discovered as early as October 1967, the applicable statute of limitations barred the Kings from obtaining any relief.

* The trial court may, if it so desires, request amended pleadings.

■ D.C.Code 1973, § 12–301, provides:

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues.

\* \* \* \* \* \*

(7) on a simple contract, express or implied—3 years;

(8) for which a limitation is not otherwise specifically prescribed—3 years.

An exception to this rule has been formulated for cases which, like the present one, involve allegations of fraud. Under such circumstances, the action must be brought within three years from the time the fraud either is discovered or reasonably should have been discovered. *See, e. g., Maddox v. Andy's Refrigeration & Motor Service Co.,* D.C.Mun.App., 160 A.2d 799, 800 (1960); *White v. Piano Mart, Inc.,* D.C.Mun.App., 110 A.2d 542, 543 (1955).

■ Although the Kings asserted the alleged fraud on October 6, 1967, they did not file their action in the trial court until July 9, 1976, almost nine years later. Because of their failure to file suit within three years of discovery of the fraud, the Kings' suit for punitive damages (a legal cause of action based on breach of contract due to fraud) properly was dismissed. The Kings' suit to nullify the purported lien against their real estate, however, was an equitable action. *See Slaughter v. Jefferson Federal Savings & Loan Association,* 361 F.Supp. 590 (D.D.C.1973), *rev'd on other grounds,* 176 U.S.App.D.C. 49, 538 F.2d 397 (1976); *cf. Hill v. Hawes,* 79 U.S.App.D.C. 168, 144 F.2d 511 (1944). It, therefore, is governed by principles somewhat different from those outlined above.

The suit unquestionably was filed as a defensive measure against the foreclosure of the Kings' home by appellees. Appellees now ask that we, in effect, bar the Kings from asserting any defense that they may have to the foreclosure—in this case, fraud in securing the underlying trust agreement and deed of trust—even though the foreclosure proceeding was not instituted until well after any legal cause of action accru-

ing to the Kings due to the underlying allegedly fraudulent transaction would have been barred by the three-year statute of limitations. We decline to adopt such a harsh rule in a suit based essentially on an equitable cause of action.

Although this precise issue has not previously been decided in this jurisdiction, *see Metzger v. Millegan,* 48 App.D.C. 156, 159 (1918), we draw guidance from a case which presented an analogous situation. In *Hill v. Hawes, supra,* the plaintiff filed suit for the cancellation of a note and deed of trust on the ground that, if the court agreed with the plaintiff that payments of usurious interest should be credited to the plaintiff, the note already was fully paid. The defendant claimed that the suit was barred by the statute of limitations. The circuit court disagreed, reasoning:

The statute of limitations does not bar the relief sought in this case. Under the usury statute recovery of usurious payments is limited to one year. Under the general statute of limitations actions not otherwise limited must be brought within three years. However, no statute puts any limitations on the claim of usury used as a defense in a suit based on the usurious obligation. A usurer cannot by delaying suit on a note acquire the right to collect the usurious payments forfeited by the statute. In substance, this suit may be regarded as one for declaratory judgment that the plaintiff's intestate had a complete defense to her obligation on the note. A declaration that there is a complete defense to the note is not barred by the statute. After it has been made by the court, cancellation of the note and mortgage follows as a matter of course and does not require a separate action on equitable grounds. The one-year statute of limitations does, however, apply to the recovery of any payments made by plaintiff's intestate in excess of the amount necessary to extinguish the note. [*Hill v. Hawes, supra,* at 170, 144 F.2d at 513 (footnotes omitted).]

■ Such reasoning also is applicable to this case. The Kings could have filed

suit for rescission of the contract and for punitive damages within the requisite period of limitation following their discovery of the alleged fraud. Their failure to have instituted such an action precludes them from attempting to recover punitive damages at this late date. However, the statute of limitations would not bar them from raising fraud as a defense to a judicial foreclosure or to a suit for payment under the contract. *See United States v. Western Pacific Railroad,* 352 U.S. 59, 71–73, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *Heck v. Rodgers,* 457 F.2d 303, 307–08 (7th Cir. 1972). Appellees may not prevent this defense from being asserted simply by delaying the initiation of an extrajudicial foreclosure proceeding until after the statute of limitations has run on the Kings' legal cause of action. The Kings' suit, like the one filed by the plaintiff in *Hill v. Hawes, supra,* in effect seeks a declaratory ruling that they have a complete defense to enforcement of the deed of trust. The Kings, therefore, are not precluded by the statute of limitations from maintaining the equitable portion of their suit.

 They are, however, faced with another hurdle—the doctrine of laches, which serves as a limitation on the filing of equitable actions. The length of time which must have passed in order for laches to apply varies with the circumstances of each case. No rigid rule, such as a specific statute of limitations, controls in a case where fraud is an issue. *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *George v. Ford,* 36 App.D.C. 315, 333 (1911). As has been stated:

Fraud creates an exception to the rule that courts of equity, in cases of concurrent jurisdiction, consider themselves bound by statutes of limitations governing actions of law. *Chiswell v. Johnston,* 55 App.D.C. 3, 299 F. 681 (1924). However, without regard to the analogy of the statute of limitations, a plaintiff asking a remedy in equity for fraud must exercise his right within a reasonable time after the discovery of the fraud. [D.C.C.E. § 12–301 ¶ 10 at 428 (1966), *citing George v. Ford, supra,* at 332.]

 In determining whether laches should apply, the trial court is to look primarily to the reasons for the delay and to the prejudice suffered by the defendants as a result of the delay. *Gardner v. Panama Railroad,* 342 U.S. 29, 30–31, 72 S.Ct. 12, 96 L.Ed. 31 (1951); *Slaughter v. Jefferson Federal Savings & Loan Association, supra,* at 602. When actual fraud is involved, relief will be barred only where the delay has worked to the disadvantage of the defendant. *Russell v. Todd,* 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (1940); *George v. Ford, supra,* 36 App.D.C. at 333. "So great is its abhorrence of fraud and the violation of fiduciary obligations, that a court of equity will look with some indulgence upon mere delay, from which no material injury has occurred." *George v. Ford, supra,* 36 App.D.C. at 333–34. *See McIntire v. Pryor,* 173 U.S. 38, 19 S.Ct. 352, 43 L.Ed. 606 (1899) and cases cited therein; *cf. Dollar v. Land,* 87 U.S.App.D.C. 214, 226, 184 F.2d 245, 257, *cert. denied,* 340 U.S. 884, 71 S.Ct. 198, 95 L.Ed. 641 (1950). Thus, "[w]here there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief." *Gardner v. Panama Railroad, supra,* 342 U.S. at 31, 72 S.Ct. at 13.

 Whether there has been inexcusable delay in seeking a remedy, and prejudice to the defendant from the passage of time, are issues which initially should be resolved by the trial court. Having so stated, we would note various factors which should be considered in making such determinations. Although the delay in this case was substantial, the Kings' suit was, in effect, a defensive measure against the foreclosure. We do not believe that a nine-year delay in filing suit, without more, necessarily constitutes a sufficiently inexcusable delay so as to present an absolute bar to plaintiff's suit under the doctrine of laches, when the action filed essentially is a defensive measure to a course of conduct entered into by the opposing party.

Furthermore, on remand the trial court should take into account the fact that the Kings' present action is duplicative of one which was filed in 1974. On January 7, 1974, appellees forwarded a letter accompanied by a notice of foreclosure to the Kings. In response, on January 22, 1974, the Kings filed a complaint seeking cancellation of the deed of trust and demanding damages for fraud. As appellees state in their brief, "[t]he note holder did not pursue the foreclosure in the light of the complaint." The 1974 complaint subsequently was nonsuited after the Kings were asked by the court how they intended to overcome the bar of the statute of limitations. Appellees in not proceeding to foreclosure in 1974 thus contributed to the nine-year delay which they now decry. The reasonableness of the Kings' nine-year delay therefore must be measured in part against the backdrop of the prior suit and the appellees' hesitancy in moving to foreclosure. In making its determinations, the trial court may draw some guidance from the following standards enunciated in *George v. Ford, supra:*

> To bar relief against actual fraud, laches must not only consist of delay, but of delay that has worked a disadvantage to the opposing party. If there have been, in the meantime, no change of title, no great rise in the value of the property, no loss of material evidence, in general, no intervention of substantial equities, it is not of controlling importance that a right shall have been pressed with promptness. [36 App.D.C. at 333.]

*Affirmed in part, reversed in part, and remanded.*