James CLOUSER, Plaintiff,

v.

TEMPORARIES, INC., Defendant.

Civ. A. No. 87–0752.

United States District Court,
District of Columbia.

Nov. 3, 1989.

John D. Quinn, Washington, D.C., for plaintiff.

Frederick C. Williams, Washington, D.C., for defendant.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

This case arises out of two written contracts—an Employment Agreement and a Purchase Agreement. In the Purchase Agreement, plaintiff[1] promised to transfer

---

**1.** Prior to February 9, 1984, the plaintiff was      president and sole owner of the stock of Busi-

stock ownership of Business Furniture Interior, Inc. ("BFI") to defendant Temporaries, Inc. ("TI"), in return for $100 cash and TI's promise to cause BFI to enter into the Employment Agreement. Plaintiff received a five year employment contract from BFI at $90,000 per year salary plus promised bonuses and other consideration. In the Purchase Agreement, TI reserved the right to withdraw from the contract by returning the BFI stock to the plaintiff "[i]f an audit of the books of BFI reveals gross misrepresentations of the Company's financial condition." *See* Complaint, Exhibit A.

After the consummation of the acquisition of BFI by TI, TI sent independent auditors to BFI and commenced an audit of BFI's books. On or about March 19, 1984, TI determined that the plaintiff had violated the "gross misrepresentation" clause of the acquisition agreement and determined to rescind the transaction and return the stock to the plaintiff. On or about March 25, 1984, TI returned the stock to the plaintiff.

On March 18, 1987, plaintiff filed a suit against TI for breach of contract. On May 29, 1987, TI filed an answer and counterclaim.[2] TI's counterclaim asserts that the plaintiff used BFI as an enterprise to defraud it and others, and therefore seeks damages under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (1982) ("RICO"), and Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and for common law fraud, fraudulent concealment, constructive fraud, punitive damages and negligent misrepresentation.

Plaintiff moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Count I on the grounds that (1) it fails to allege sufficiently a violation of RICO and (2) it fails to plead fraud sufficiently as required by Rule 9(b) of the Federal Rules of Civil Procedure. Further, plaintiff argues that TI failed to file its counterclaim with respect to Counts II–VI within the applicable statute of limitations.

This matter is before the Court on plaintiff's motion to dismiss TI's amended counterclaim for failure to state a claim.[3] The Court heard oral argument on September 18, 1989. Upon review of the motion, the opposition thereto, the arguments, and the entire record, the Court concludes that the motion should be granted.

## I.

In a motion to dismiss pursuant to Rule 12(b)(6), the Court must read the facts alleged in the complaint in the light most favorable to the plaintiff. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). It is well established that a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Here, the Court must read the facts most favorable to the counter-claimant, with respect to the counterclaim.

TI has submitted a 30 page counterclaim.[4] With respect to Count I, violation of the RICO act, TI alleges, *inter alia,* the following: TI contends that Clouser and other unnamed individuals associated with him are each a person within the meaning of 18 U.S.C. § 1961(3) and § 1962(c). Counterclaim at par. 61. BFI was an en-

---

ness Furniture Interiors, a corporation incorporated under and by virtue of the laws of Virginia and whose principal office and place of business is located in 2070 Chain Bridge Road, Vienna, Virginia. Plaintiff's Complaint at par. 5.

**2.** TI subsequently filed an amended answer and counterclaim. TI amended counterclaims adds a claim for securities violation.

**3.** Plaintiff's motion to dismiss the amended complaint incorporates by reference his Memo-

randum of Points and Authorities In Support of Motion to Dismiss Counterclaim filed on June 20, 1987.

**4.** Plaintiff argues that TI's counterclaim fails to plead fraud sufficiently as required by Rule 9(b) of the Federal Rules of Civil Procedure. It appears to the Court, that the counterclaim does plead fraud sufficiently; however, because the Court finds that the motion should be granted on other grounds, the Court need not address plaintiff arguments regarding Rule 9(b).

terprise within the meaning of 18 U.S.C. § 1961(4) and § 1962(c) which engaged in, or the activities of which affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c). *Id.* at par. 62. Clouser, in furtherance of the scheme or artifice to defraud Temporaries, at various times knowingly and willfully transmitted or caused to be transmitted by means of wire communication in interstate commerce telephone calls between himself or his agents and officers or agents of Temporaries, and between himself or his agents and third parties, including Maryland National Bank in violation of 18 U.S.C. § 1343. *Id.* at par. 64.

Clouser, in furtherance of the artifice or scheme to defraud, made false representations and material omissions of fact to induce TI to acquire BFI's stock in violation of Rule 10b-5 of the Securities and Exchange Commission and § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b). *Id.* at par. 65. The combination of Clouser's separate scheme to defraud National Acceptance Corporation by inflating accounts receivable, separate scheme to defraud Maryland National Bank in violation of 18 U.S.C. § 1014 with a false and misleading financial statement and with inflated fraudulent accounts receivable, and the scheme to defraud TI using a false financial statement and/or fraudulent accounts receivable and false oral representations as to the earnings and worth of BFI, have the requisite relationship and continuity to constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). *Id.* at par. 66.

## II.

■ The Racketeer Influenced and Corrupt Organizations Act, Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968, provides a private civil action to recover treble damages for injury "by reason of a violation of" its substantive provisions. 18 U.S.C. § 1964(c). TI's counterclaim alleges violation of § 1962(c) of RICO. That provision provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"Racketeering activity" is defined in RICO to mean "any act or threat involving" specified state-law crimes, any "act" indictable under various specified federal statutes, and certain federal "offenses." U.S.C. § 1961(1). "Pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years after the commission of the prior act of racketeering activity. U.S.C. § 1961(5).

Plaintiff argues that the counterclaim fails to state a cause of action under RICO. More specifically, he argues that the stock acquisition in which TI claims injuries is not related to the "enterprise" as required by RICO and TI has not alleged a "pattern of racketeering activity" sufficient to state a claim under RICO. The Supreme Court has addressed the pattern requirement of civil RICO. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), *H.J. Inc., et al. v. Northwestern Bell Telephone Company, et al.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

The Supreme Court noted:
The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis the Supreme Court's).

*Sedima, S.P.R.L.,* 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14 (1985). The Supreme Court has further noted that:

RICO's legislative history tell us, however, that the relatedness of racketeering activities is not alone enough to satisfy § 1962's pattern element. To establish a RICO pattern it must be shown that the predicates[5] themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity. *H.J. Inc.*, —— U.S. at ——, 109 S.Ct. at 2901 (1989).

The Supreme Court continues to struggle over what activities constitutes a threat of continuity to establish a RICO pattern.

The Court has stated:

The limits of the relationship and continuity concepts that combine to define a RICO pattern, and the precise methods by which relatedness and continuity or its threat may be proved, cannot be fixed in advance with such clarity that it will always be apparent whether in a particular case a "pattern of racketeering activity" exist.

*Id.* at ——, 109 S.Ct. at 2902. The Court noted, for example, that "[a] RICO pattern may surely be established if the related predicates themselves involve a district threat of long-term racketeering activity, either implicit or explicit." *Id.* In addition, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.*

The Supreme Court has stated that RICO is to "be liberally construed to effectuate its remedial purposes," *Sedima, S.P.R.L.*, 473 U.S. at 498, 105 S.Ct. at 3286 (1985), while noting that, "RICO is evolving into something quite different from the original conception of its enactor." *Id.* at 500, 105 S.Ct. at 3287. Lower courts have attempted to comply with the liberal standards; however, continuing to dismiss claims that clearly were not intended under RICO, where the complaint failed to state a claim.

*See Lipin Enterprises Inc. v. Lee*, 803 F.2d 322 (7th Cir.1986) *aff'g* 625 F.Supp. 1098 (N.D.Ill.1985), *SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d 936 (7th Cir.1988), *Perkins v. Nash*, 697 F.Supp. 527 (D.D.C.1988), *Bros. v. Culver*, 650 F.Supp. 874 (D.D.C.1987).

Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case. *Id.* at ——, 109 S.Ct. at 2902. Viewing the facts most favorable to the counterclaimant, the Court concludes that TI has failed to show that the predicate acts amounted to a threat of continuing racketeering activity.[6] TI argues that "Mr. Clouser conducted the affairs of BFI through a pattern of inflating assets to obtain credit and thereby keep BFI in operation, and later to obtain equity investment when the credit well finally ran dry, also to keep BFI in operation." Defendant's Opposition to Plaintiff's Motion to Dismiss Counterclaim at 12. TI has outlined the "predicate acts" that it believes constitutes relatedness and the multiple transactions tests for a pattern of racketeering activity. *Id.* at 13–16. But, TI fails to show that the predicates amounted to a threat of continuing racketeering activity.

Moreover, the facts in this case are unique, in that the purchase agreement allowed TI to reserve the right to withdraw from the contract by returning the BFI stock to the plaintiff "if an audit of the books of BFI reveals gross misrepresentations of the Company's financial condition." *See* Complaint, Exhibit A. TI exercised that right. Upon the termination of the contract, there is nothing to suggest continuing racketeering activity. TI must allege more than isolated predicate acts to show the affairs of an enterprise were conducted through a pattern of racketeering activity. *Lipin Enterprises, Inc. v. Lee*, 625 F.Supp. 1098, 1100 (N.D.Ill.1985), *aff'd* 803 F.2d 322 (7th Cir.1986), *See also, e.g.,*

---

**5.** The predicates refer to the predicate acts or offenses that constitute the RICO claim.

**6.** The Court assumes *arguendo* that the counterclaimant has established the relationship element of the pattern requirement.

*Sedima, S.P.R.L.,* 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14 (1985).

In *SK Hand Tool Corp.,* the court held that the defendant's misrepresentation of the hand tool division's true financial condition does not constitute a pattern of racketeering activity. 852 F.2d at 943 (7th Cir. 1988). The court stated that "[a]lthough several acts of mail and wire fraud were involved, they were all committed after Corcoran expressed its desire to buy the division." *Id.* The court concluded that "[t]he predicate acts resulted in only one transaction, which caused only one harm to one victim." *Id.* The Seventh Circuit, dismissed a complaint on similar grounds in *Lipin Enterprises, Inc.,* 803 F.2d 322 (7th Cir.1986).[7]

■ The court in *SK Hand Tool Corp.,* found "there has been no threat of continuing fraudulent activity by the [defendant] after the division was sold." 852 F.2d at 941 (7th Cir.1988). This Court finds similarly that there was no threat of continuing activity after the termination of the contract between Mr. Clouser and TI. Accordingly, the Court concludes that plaintiff's motion to dismiss the amended counterclaim with respect to count I should be granted.[8]

### III.

■ It is undisputed that Counts II–VI of TI's counterclaim, with respect to the claims of fraud, fraudulent concealment, constructive fraud, punitive damages, neg-

ligent misrepresentation, are governed by the three-year limitations period provided in D.C.Code § 12–301(8) for claims "for which a limitation is not otherwise specifically prescribed." In the District of Columbia, there is a three-year statute of limitations for fraud claims, and that period begins to run from the time the fraud of misrepresentation "either is discovered or reasonably should have been discovered." *Lawson v. Nationwide Mortgage Corp.,* 628 F.Supp. 804, 806 (D.D.C.1986), *citing King v. Kitchen Magic, Inc.,* 391 A.2d 1184, 1186 (D.C.1978).

Plaintiff notes that "[a]lthough TI and its agents were previously aware of the facts that have resulted in TI's fraud allegations, on March 16, 1984, Michael Bollinger was specifically informed by James Keating 'that the accountants could now document serious problems in BFI's accounts.'" Plaintiff's Memorandum In Support of Motion to Dismiss Amended Counterclaim at 4–5, *citing* Defendant's Statement of Material Facts As to Which There Is No Genuine Issue In Support of Its Motion for Summary Judgment at par. 76. Plaintiff argues that "[a]ccordingly, the three-year statute of limitations began to run, at the very latest, on March 16, 1984, when TI's agents made their report of the results to TI." *Id.* at 5.

TI argues that plaintiff's argument ignores the fact that TI did not sustain a completed loss until it rescinded the stock transfer in a meeting on March 20, 1984. Defendant's Memorandum In Opposition to

---

**7.** In *Lipin,* the court held that twelve acts of mail fraud furthering several misrepresentations of the value of a company for sale did not comprise a pattern of racketeering activity. There, the defendant had overstated the net worth of the company that the plaintiff had purchased, and it had omitted several equipment and open-end leases from the lease inventory upon which the plaintiff had relied in deciding to buy the company.

**8.** With respect to Count IA regarding securities fraud, the Court concludes that the claim is barred by the statute of limitations. TI concedes that the securities fraud count of the amended counterclaim is barred by the two-year D.C. blue sky statute of limitations of D.C. Code § 2–2613(e) under the doctrine of *Forrestal Village, Inc. v. Graham,* 551 F.2d 411 (D.C.

Cir.1977). Defendant's Memorandum In Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim at 1. However, TI relies on the four-year Clayton Act statute of limitations applied to RICO actions. *See Agency Holding Corp. v. Molley Duff Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). TI argues that not all violations alleged as predicate acts under RICO need be within the statute of limitations, since at least one of the alleged predicate acts occurred within four years of filing the counterclaim. Defendant's Memorandum In Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim at 1. Because the Court has concluded that the RICO claims must be dismissed for failure to state a claim, the securities claim must be dismissed as time barred.

Plaintiff's Motion. to Dismiss Amended Counterclaim at 2. However, the question as to when TI sustained its lost is not dispositive as to when the statute of limitation begins to run; the inquiry is when "the fraud or misrepresentation either is discovered or reasonably should have been discovered." Clearly, the fraud, if any, was discovered on March 16, 1984 when TI agents made their findings of the audit report to TI. Plaintiff instituted this suit on March 18, 1987, more than three years beyond the statute of limitations period.[9] Accordingly, the Court concludes that Counts II–VI should be dismissed as barred by the statute of limitations.

### IV.

For the reasons discussed above, the Court concludes that the plaintiff's motion to dismiss the amended counterclaim should be granted.

Gregory K. McGillivary, Mulholland & Hickey, Washington, D.C., for plaintiffs.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., for defendants.

---

**9.** TI had argued that, at least for compulsory counterclaims, the statute of limitation would relate back to the filing of the complaint.

