**JUNGERSEN**

v.

**AXEL BROS., Inc., et al.**

United States District Court
S. D. New York.
March 31, 1954.

Arthur J. Brothers, New York City, for plaintiff, Elliott L. Biskind, New York City, of counsel.

John Vaughan Groner and William K. Kerr, New York City, for defendants.

RYAN, District Judge.

A number of defendants who have appeared herein have moved prior to answer for summary judgment, Rule 56 (b), 28 U.S.C.A. These have also moved to dismiss this suit urging that the complaint fails to state a claim upon which relief can be granted, Rule 12(b)(6). Examination of the complaint shows it to be sufficient in law. This latter motion is denied; a different result is reached on the motion for summary judgment. It appears that there is no genuine issue as to any material fact and that the moving defendants are entitled to dismissal of the complaint upon the merits.

The complaint states a claim for relief in equity; it is in the nature of a bill of review and prays "that the judgment entered in Civil Action #24–221 of this Court, entitled Jungersen against Robert Baden, et al., entered on the 7 day of February, 1947, be vacated and set aside."

This prior suit was filed on February 14, 1944, by the plaintiff for the alleged infringement of a patent issued to him covering a method for the making of precision castings by the lost wax process employing the application of centrifugal force in the formation of the wax model and final casting. The patent—No. 2118468—issued on May 24, 1938 on an application filed on September 28, 1934. The defendant Baden denied infringement and pleaded invalidity of the patent. After trial it was concluded by the trial judge that "all of the claims of the patent in suit are invalid because anticipated and for want of invention." It was upon this conclusion that the judgment of invalidity now sought to be vacated and set aside was entered on February 7, 1947, D.C., 69 F.Supp. 922, this judgment was affirmed on appeal, 2 Cir., 166 F.2d 807; 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235, rehearing denied 336 U.S. 915, and 932, 69 S.Ct. 600, 93 L.Ed. 1078. The proceedings in this proir suit are in the files of this court and notice has been taken of them. Cf. National Fire Ins. Co. v. Thompson, 1930, 281 U.S. 331, 336, 50 S.Ct. 288, 74 L.Ed. 881.

The complaint herein pleads that the judgment was fraudulently begotten and born of "a calculated and predetermined plan to prevent a fair trial of the issues and to deceive and defraud this court" (paragraph 13th), and that it was a purpose of the plan "to convince the trial court that each step in plaintiff's method was anticipated and * * * well known in the art, and in general use." (Paragraph 12th.) The complaint further alleges that "the court was influenced and misled in its evaluation of the factual issues and of the inventive nature of plaintiff's process by the testimony of Sam Tour and Robert Baden" (Paragraph 19), who were called as witnesses by the defendants on the trial and that the testimony of these two witnesses was falsely and knowingly given as part of the alleged plan.

The complaint further recites the filing in 1941 of another suit in the United States District Court for the District of New Jersey brought by Ostby and Barton Company, naming the plaintiff herein as defendant, and in which prayer was made for a declaratory judgment of invalidity and non-infringement of the same patent as that in the instant suit. In the suit filed by Ostby and Barton, the complaint herein alleges that Sam Tour testified as an expert witness for Ostby and Barton. It appears of record that on the trial of that suit it was adjudged that certain of the claims of the patent in suit were valid but not infringed, and that other claims of the patent were adjudged invalid. Ostby & Barton Co. v. Jungersen, D.C., 65 F.Supp. 652, the Court of Appeals for the Third Circuit affirmed 163 F.2d 312, but the Supreme Court reversed holding the patent invalid, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235.

With particularity, the complaint herein alleges that in the trial of the suit in the Southern District of New York culminating in the final judgment of invalidity which plaintiff by the instant suit seeks to have set aside and

vacated the testimony of Sam Tour and Robert Baden was false and perjurious.

Thus, the complaint alleges that Sam Tour falsely testified that:

"(a) He worked with Mr. Kralund at Doehler Die Casting Company, owner of the Kralund patent, and in experimental work there with Mr. Kralund he did some of the work in connection with the Kralund method;

"(b) That the process taught by the Kralund patent was substantially the same as, and preceded the process embodied in plaintiff's patent, and that there is no limitation upon the intricacy of castings made by the Kralund process;

"(c) That the Kralund patent was a practical and operative method of introducing wax into a mold by the use of an applied force, and was a practical and commercially successful method of precision casting and was used commercially with great success."

This testimony of Sam Tour, the complaint further alleges was false in the following respects:

"a. That at no time during the employment of Sam Tour by the Doehler Die Casting Company did he work with Mr. Kralund on any experimental work on the Kralund process;

"b. That the Kralund process differed substantially from plaintiff's process in that there is a limitation upon the intricacy of castings made by the Kralund process and it used no original model around which a primary mold is built, as does plaintiff's process, and therefore, cannot reproduce a true replica in wax or metal of an original model, which is the essential new feature of plaintiff's process.

"c. That the Kralund process was not a practical and operative method, and was neither practical nor commercially successful and was never used at Doehler Die Casting Company and was abandoned after a few months' experimental work before Sam Tour was employed by the Doehler Die Casting Company."

The complaint also alleges that "Sam Tour held himself out to the court as a disinterested expert witness, with no interest in the outcome of said action," and that "in fact, the defendant Sam Tour, at the time of so testifying, was employed by the Ostby & Barton Company, as a consultant; and said Ostby & Barton Company made a financial contribution to the defense of said action, although not a party thereto, and was secretly interested in voiding plaintiff's patent and in influencing the court to that end through the testimony of Sam Tour."

Of the testimony given by Robert Baden, the complaint alleges that he "testified that in 1936, before meeting plaintiff, he used plaintiff's process to make precision castings, and that he used primary molds of rubber and metal made around an original model"; that this testimony was "false and known by him to be false at the time of so testifying, in the following respects: That at the time mentioned, Robert Baden used the sand and cuttlebone methods of casting, and did not use, and was unacquainted with plaintiff's process of precision casting and the use of a primary mold made from an original model."

Following these allegations of perjurious testimony by the witnesses, Sam Tour and Robert Baden, alleged to have been given as part of a "calculated and predetermined plan to prevent a fair trial of the issues and to deceive and defraud this court" and to "convince the trial court that each step in plaintiff's method was anticipated and well known in the art, and in general use," the relevance and materiality of this testimony is pleaded as follows:

"The findings of the trial court that the Austenal, Hazeltine, Spencer, LaGravure and Kralund patents followed fundamentally the same system as that employed by plaintiff's patent, that the work and

teaching of Cellini in the casting art constituted prior disclosures of plaintiff's patent and process, and the finding of the trial court that plaintiff's process had been used commercially prior to plaintiff's patent, and that Kralund had directed his efforts toward the more exacting requirements of precision of tool casting, were based upon and influenced by the testimony of Sam Tour and Robert Baden; and, disregarding the Baden and Tour testimony, there are no facts in the record to support such findings, and therefore there could have been no decision holding plaintiff's patent invalid on the ground of want of invention or prior disclosure."

It appears of record that the plaintiff on August 7, 1951 filed another suit in this court (Civil Action No. 68–349) against the same defendants as here named, seeking the relief now sought on a complaint alleging substantially the same matters as here and that this suit was dismissed for lack of prosecution on November 17, 1953.

I shall assume for decision here that plaintiff is not estopped or barred by laches and that the instant suit has been timely filed on an equitable claim which has been diligently prosecuted. I accept, too, for this decision although not proved and sharply contradicted, the allegations of perjurious testimony and of its subornation. I do not differ with plaintiff's legal conclusion that perjurious testimony suborned by a party to litigation, affecting material matter, will, if established, support a bill of review in equity when a fraud has by this means been perpetrated on the court. The degree of fraud here alleged, if proved, would entitle a litigant who has unearthed it and proceeded with diligence to the relief sought. But plaintiff is not entitled to the relief he seeks even assuming he could establish what he alleges because the records of this court and the opinions filed clearly indicate that the testimony of Sam Tour and Robert Baden, which it is alleged was perjurious, was completely irrelevant and immaterial to the decision of invalidity ultimately made and was not the basis of the conclusion reached.

I come first to examine the opinion and the factual findings and conclusions of the learned trial judge, Simon H. Rifkind, 69 F.Supp. 922. I note that the trial court concluded that "the claims are invalid because anticipated and for want of invention." 69 F.Supp. at page 928. This conclusion was reached after findings were made of "commercial success" (which I interpret as equivalent to ready acceptance of the patent as an advance in the art). When considering the question of invention the trial judge received and examined the prior art. 69 F.Supp. at pages 924–926. After doing this he posed the question of whether the plaintiff's teachings as disclosed in his claims amounted to invention, as follows:

"The novel feature of the Jungersen process relates to the casting of the primary pattern in wax or other fusible material. He injects the wax into the primary mold by centrifugal force. Does that constitute invention?" 69 F.Supp. at page 926.

He noted that Cellini in the 16th Century described how "he pours his wax, apparently employing no force but gravity to fill his mould" (Finding No. 8); that Hazeltine simply taught that "he pours melted wax," but suggested that "ordinary pouring of the metal into the clay mould will not give clear definition of lines and therefore recommends that the metal be poured through a pipe from a sufficient height so as to produce the required pressure" (Finding No. 9); that Kralund taught "the use of 'cire perdue' process with the addition of pressure derived from a die casting apparatus for the introduction of the wax into the die and for the introduction of the metal into the final mould" (Finding No. 11); that La Gravure did not teach "the use of pressure in the wax casting stage but does suggest the use of steam pressure in the metal casting stage"

(Finding No. 12); and that during 1932–1933 the Austenal Laboratories employed in the casting of dentures a process that was "identical with Jungersen's except for the use of an eye dropper to squirt the wax into the rubber mould in place of a centrifugal machine" and that "for casting the metal Austenal employed a centrifugal machine or air pressure" (Finding No. 13).

The trial judge further found that

"Jungersen's British patent, the substantial equivalent of the patent in suit, admits that every step in the process of the patent in suit except the means of casting the wax and the metal was old." (Finding No. 15.)

Specifically he stated:

"In view of the findings and conclusions as to validity, no finding is made as to whether or not these variant methods are infringements."

and,

"To the extent that defendants have used centrifugal force to deposit the wax into a primary mould, and all have, there can be no question that they have infringed." (Finding No. 3.)

None of these findings are based upon the alleged perjurious testimony; all find support in the historical records and prior patents received in evidence on the trial.

The judge noting that "plaintiff practically concedes the equivalence of the several modes for the application of force—namely, syringes, air pressure and centrifugal machines"—found that "the substitution of centrifugal force for other means of casting the wax is not invention, but the application of an equivalent means." (Finding No. 19.) Following the above we read in the further finding of the court that:

"In the casting art it was old knowledge that the forced introduction of molten material into a mould produced greater definition of line and contour and greater fidelity of reproduction. McManus' patent showed the use of a centrifugal machine as the source of force for such purpose, which lent itself especially to small casting, specifically including jewelry. Were it at that time desired to make faithful wax castings, as the final article of manufacture, it would not amount to invention to introduce the wax into the mould by centrifugal force. Nor does it amount to invention when casting the wax pattern is an intermediate step in a longer process." (Finding No. 21)

It was upon these findings that the conclusion was made that "all of the claims of the patent in suit are invalid because anticipated and for want of invention."

Later, the Court of Appeals, 166 F.2d 807, at page 809, writing of Jungersen's statement in his British patent (referred to above) observed:

"It is clear from this admission that all but the use of centrifugal casting to force the wax and the metal into their respective moulds was deemed old. The validity of this statement in Jungersen's British patent is amply demonstrated by the prior art."

And,

"Thus plaintiff's patent can be sustained only if the use of force to cast the wax and the metal is such a change of a known method as to amount to invention. We think it is not."

Of the findings made in the Ostby and Barton litigation, the Court of Appeals wrote in 166 F.2d at page 810:

"The judge in the Ostby & Barton case referred to the use of centrifugal force as an 'additional step' in the art which was both 'new' and 'novel.' We are forced to disagree."

Mr. Justice Reed writing for the Supreme Court, 335 U.S. 560 at pages 564, 565, 69 S.Ct. 269 at page 271, said:

"Long before the issuance of this patent, however, those skilled in the art recognized and disclosed the necessity for the application of force in order to make molten materials fit snugly the intricate details of the mould."

And, 335 U.S. at page 565, 69 S.Ct. at page 271:

"Whether these types of pressure are the equivalent of centrifugal force we need not decide since it is evident from patents and publications that the use of the latter was well known in the art. In 1923 McManus patented a casting machine which was adapted 'to the casting of jewelry, such as gold rings, small trinkets, etc., where metal or other dies or moulds may be * * * filled by centrifugal casting methods.' "

And, 335 U.S. at page 566, 69 S.Ct. at page 272:

"The patentee claims that the centrifugal forcing of wax into the primary mould had never before been combined with the other features of his process. We think this fact is of no legal significance. Where centrifugal force was common as a means of introducing molten metal into the secondary mould, its use in an intermediate step to force molten wax into the primary mould was not an exemplification of inventive genius such as is necessary to render the patent valid." (Citing cases.)

From an analysis of the alleged perjurious testimony and of the decisions herein it is apparent that the findings and opinions of the District Court, the Court of Appeals and the Supreme Court were based entirely on grounds independent of matters with which defendants Tour and Baden's testimony was concerned. No manifest injustice can result from the enforcement of a judgment of invalidity which was based on unchallenged matter.

The interests of justice require that ordinarily where a final judgment has been rendered there should be no opportunity to relitigate the same matter. "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." Ackermann v. United States, 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207. "Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all facts. A rule which would permit the reopening of cases previously decided because of error or ignorance during the progress of the trial would, in large measure, vitiate the effects of the rules of res judicata." Restatement of Judgments, Section 126, comment a. Only where the operation of this rule would be manifestly unconscionable will equitable relief be afforded. Restatement, id. One such instance exists where the judgment has been procured as the result of a calculated and premeditated conspiracy to defraud the court. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250. But, generally judgments will not be set aside after the term in which they were rendered solely for intrinsic fraud. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93. Cf., Columbia Law Rev., 54–403. Tampering with institutions set up to safeguard the public wherein fraud cannot "complacently be tolerated", Hazel-Atlas, supra, presents sufficient reason to disturb these general doctrines of repose.

The alleged plan to deceive the court herein of which the alleged perjured testimony offered by defendants Tour and Baden is claimed to have been a part cannot be relied upon to set aside the judgment of invalidity. Where perjurious testimony in furtherance of a premeditated plan or conspiracy has played some part in influencing the court to render a judgment which it would be unconscionable to enforce, the effect of such testimony will not be

weighed in a suit in equity to set aside that judgment. Hazel-Atlas, supra. The testimony will be deemed material as a matter of law, since it was offered to defraud the court and achieved that end. No such situation exists here; the alleged perjurious testimony here relied upon by the plaintiff was in no way relevant to the grounds upon which the judgment of invalidity was rendered.

Motion granted; complaint dismissed upon the merits. The clerk is directed to enter judgment accordingly.