Jane G. LOCKWOOD et al., Plaintiffs,

v.

Catherine BOWLES
and
William A. Lockwood, Defendants.

Civ. A. No. 2204-52.

United States District Court
District of Columbia.

March 3, 1969.

Thomas A. Flannery, and Stephen A. Trimble of Hamilton & Hamilton, Washington, D. C., for plaintiffs.

Rotraud M. Perry, Washington, D. C., for defendant.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This is a motion by defendants Catherine Bowles and William A. Lockwood for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure and for a trial on kinship. The record in this case, originally an action for declaratory judgment, dates back to 1952 and involves facts from as early as 1910. The factual summary which follows is gleaned from the memoranda of the parties submitted in support of and in opposition to this motion, from the file in this case, and from the file in a companion case.[1]

This action was commenced in 1952, when the trustees of the estate of Henry A. Lockwood and other plaintiffs sought to obtain a judgment declaring that defendants are not the natural children of William P. Lockwood, who died in 1940 and who was a beneficiary named under the will of his father, Henry A. Lockwood. Had it been determined that defendants were the lawful issue of William P. Lockwood, then they would have been entitled to an interest in the estate of Henry A. Lockwood; otherwise, they were not entitled to share in the estate.

Immediately prior to trial, each defendant filed a statement that:

> \* \* \* I have fully considered the issues developed by the pleadings filed in this action; that in this regard I have had the full benefit and advice of counsel; that I have made diligent effort to ascertain all available evidence, both documentary and otherwise in order for me to successfully defend this action; that I have concluded that on the basis of the evidence which is now available as the result of my diligent efforts as aforesaid, that I cannot properly defend this action; that accordingly I have re-

1. The companion case is Civil Action Number 712-65, which is captioned In the Matter of the Petition of Catherine V. Bowles and William A. Lockwood to Perpetuate the Testimony of Joseph Capra and Mary Stalcup.

luctantly reached a decision and so advise the Court that I will not make any contest in regard to the issues raised herein, and that I shall not participate in any further proceedings had in this action.

\* \* \* I further consent that the Court may take such further proceedings as it may deem proper under all the circumstances and without further notice to me or to any attorney for me.[2]

The trial was held before Judge Luther W. Youngdahl of this Court on November 9, 1954. Plaintiffs produced two witnesses, Jane Girvan Lockwood and Blanche Catherine Lockwood. In accordance with the statements signed by defendants, no one appeared on behalf of defendants and they produced no witnesses or evidence. Blanche Catherine Lockwood testified that she was the widow of William P. Lockwood; that she and Mr. Lockwood had raised two children (the defendants) whom they had obtained from foundling homes; that they never adopted either child; that she, Blanche Catherine Lockwood, had never had any children of her own during the marriage; and that she had had an operation in 1910 in which her ovaries and fallopian tubes were removed.[3] Also introduced at the trial were records of the Georgetown University Hospital showing that Blanche Catherine Lockwood had had her reproductive organs removed in 1910.

On November 29, 1954, Judge Youngdahl entered findings of fact, conclusions of law and a declaratory judgment establishing that Blanche Catherine Lockwood had been rendered incapable of childbearing prior to the time defendants were born and that, although defendants had been raised from childhood by William P. Lockwood and Blanche Catherine Lockwood, they were not the lawful issue of William P. Lockwood. The effect of this judgment was to preclude the defendants from sharing under the will of Henry A. Lockwood, as issue of William P. Lockwood.

Eleven years later, on March 25, 1965, defendants filed a petition to perpetuate the testimony of Mary Stalcup and Joseph Capra.[4] The petition alleged that the testimony of these witnesses and the records of an Atlantic City hospital would contradict the prior testimony of Blanche Catherine Lockwood and would prove that Catherine Bowles and William A. Lockwood were the natural children of William P. Lockwood and Blanche Catherine Lockwood. On August 25, 1965, Judge Spottswood W. Robinson, III, then of this Court, granted leave to take the depositions of the two witnesses. Said depositions were subsequently taken and filed in Civil Action Number 712–65.

Defendants' present motion for relief from judgment and a trial on kinship is based on allegations that plaintiffs perpetrated fraud upon the United States District Court. Such fraud allegedly consisted of a carefully planned scheme in which plaintiffs coerced Blanche Catherine Lockwood to falsely testify at the 1954 trial that she was not the mother of defendants Catherine Bowles and William A. Lockwood. Allegedly, the coercion consisted of a conveyance of certain real estate to Blanche Catherine Lockwood and of instilling in her the fear that she would be deported and stripped of every means of livelihood if she did not cooperate in the scheme. It is alleged that Blanche Catherine Lockwood knew she was testifying falsely in 1954 and that she also knew that the Georgetown University Hospital record had been falsified. Although Mrs. Lockwood is now an adjudicated incompetent, it is alleged that she has confessed her perjury and the falsity of the hos-

---

2. *See* identical statements of William A. Lockwood and Catherine Bowles filed in Civil Action Number 2204–52 on October 5, 1954.

3. Official transcript, Lockwood v. Bowles (Civil Action Number 2204–52), November 9, 1954, pp. 14–28.

4. Civil Action Number 712–65.

pital record during a "lucid" moment. It is also alleged that the falsity of the Georgetown University Hospital record is corroborated by the records of an Atlantic City, hospital which indicate that one Georgian Lockwood—allegedly an alias of Blanche Catherine Lockwood —suffered a miscarriage subsequent to the date when Blanche Catherine Lockwood supposedly had her reproductive organs removed.[5] Counsel for defendants contends that defendants were unable to file this motion previously because the former director of Friends Hospital, where Blanche Catherine Lockwood has been a patient since September of 1962, would not allow Dr. William Oschell to divulge this information conveyed to him by Mrs. Lockwood while in a "lucid" moment. The newly appointed director has now permitted Dr. Oschell to make a statement to defendants' attorney, and the May 27, 1968, letter of Dr. Oschell has been filed. In summary, the relevant factual contentions on which defendants base their allegation of fraud upon the court sufficient to justify granting relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure, are as follows:

(1) That William P. Lockwood and Blanche Catherine Lockwood devised a scheme in 1910 whereby they would pretend that William A. Lockwood (and later, Catherine Lockwood Bowles) were not their natural children; in furtherance of that scheme, they produced a fraudulent hospital record indicating that Blanche Catherine Lockwood was incapable of having children; (2) that Blanche Catherine Lockwood testified falsely at the trial in 1954 before Judge Youngdahl, and that her false testimony led to his erroneous findings of fact and conclusions of law; and (3) that plaintiffs induced the perjured testimony of Blanche Catherine Lockwood in consid-

eration of transferring property to her and by playing on fears that she would be deported.

After having heard argument on this motion and having reviewed the record in this and the companion case, including transcripts of proceedings, depositions and affidavits, and viewing the allegations of fraud in a light most favorable to defendants, the Court reaches the following conclusions: (1) The one year limitation period of Rule 60(b) (3) of the Federal Rules of Civil Procedure precludes the granting of relief to defendants under that part of the Rule. (2) The doctrine of laches bars the maintenance of an independent action by defendants under Rule 60(b). In addition, there is no basis for such an action because the fraud alleged here is intrinsic rather than extrinsic. (3) The 1954 judgment cannot be set aside for "fraud upon the court" under Rule 60(b), because the facts alleged by defendants, even if proved, would not constitute such fraud. The most that defendants have alleged is perjury by a witness and newly discovered evidence. Perjury does not constitute "fraud upon the court." (4) Relief from the 1954 judgment based on newly discovered evidence is precluded by the one year limitation of Rule 60 (b) (2).

█ 1. Rule 60(b) (3) of the Federal Rules of Civil Procedure authorizes the Court which rendered the judgment to grant relief from a final judgment because of fraud (whether intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party. The motion must be made within a reasonable time and, in any event, not later than a year after judgment.[6] Since the judgment from which defendants seek relief is a 1954 judgment, the one year limitation period of Rule 60(b) (3) precludes this Court from granting the re-

---

5. The records of the Atlantic City hospital are filed in Civil Action Number 712-65.

6. Fed.R.Civ.P. 60(b). *See also* 7 J. Moore, Federal Practice ¶ 60.33 at 504 (2d ed.1968) [hereinafter cited as Moore's Federal Practice].

quested relief under that section of the Rule.

2. Rule 60(b) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, * * *."[7] However, while the one year period of limitations for alleging fraud does not apply, such an independent action may be barred by the doctrine of laches.[8] That doctrine serves as a bar when the party seeking relief has not exercised due diligence in presenting his claim or defense, and the opposing party has been prejudiced by such delay.[9]

In the instant case, plaintiffs have been greatly prejudiced by defendants' fourteen year delay in seeking to present their defense. In the interim, the witness Blanche Catherine Lockwood has been adjudicated mentally incompetent; Margaret Lockwood, a party in the action and a sister of William P. Lockwood, and one to whom fraud is attributed by defendants, is now dead; the witness Inez Stalcup is now deceased; Sarah V. Lockwood, a sister of William P. Lockwood, is dead; Mary L. Foster, another sister of William P. Lockwood, is also deceased. This is the very situation the Court of Appeals of this Circuit had in mind when it discussed the appropriateness of invoking the doctrine of laches in George v. Ford:[10]

If the situation of the parties has materially changed during the delay, —for example * * * if there has been the death of the defendant or witnesses, and the probable loss of material evidence, and the like—then, if it shall appear that the plaintiff, with full knowledge of his rights, or the means of such knowledge at hand, has slept on them, it would be inequitable, under the circumstances, to entertain his suit. On the other hand, where no such conditions have arisen —no such equities intervened—mere lapse of time that is not so excessive as to warrant a presumption of their existence ought not to bar relief where actual fraud has been committed.[11]

This Court must conclude that defendants with full knowledge of their rights have slept on them for fourteen years. Even assuming that they could prove their presently unfounded allegations of fraud, an assumption which from the record is highly dubious, the facts upon which their motion is predicated have, with few exceptions, been in their possession for a period of time in excess of three years. Indeed, most of the facts have been known to defendants for more than fourteen years.

The only new facts alleged are the statement of the incompetent Blanche Catherine Lockwood, while in a "lucid" moment, that her testimony at the 1954 trial was false and that the Georgetown University Hospital records are false; an Atlantic City hospital miscarriage record in the name of Georgian Lockwood, allegedly an alias of Blanche Catherine Lockwood; and the depositions of Mary Stalcup and Joseph Capra. With the possible exception of the Atlantic City hospital record, the failure to divulge this evidence at the 1954 trial on the merits shows a lack of due diligence by defendants. There is no explanation whatever for defendants' failure to call Mary Stalcup and Joseph Capra as witnesses in 1954; defendants' failure to locate and call these witnesses demonstrates a lack of diligence in defending the action. As for the revelation disclosed by Blanche Catherine Lockwood's statement while "lucid", this could have been discovered in 1954 by the traditional method used in our legal system to expose false testimony—vig-

---

7. Fed.R.Civ.P. 60(b).

8. 7 Moore's Federal Practice ¶ 60.33 at 505.

9. *E.g.*, Abraham v. Ordway, 158 U.S. 416, 420, 15 S.Ct. 894, 39 L.Ed. 1036 (1895).

10. 36 App.D.C. 315 (1911).

11. *Id.* at 333.

orous cross-examination.[11a] By abandoning their defense, defendants waived their right to cross-examine Blanche Catherine Lockwood at the 1954 trial when she was of sound mind and when her testimony would have been infinitely more reliable than a statement made fourteen years later by an adjudicated incompetent. In sum, the "new" evidence which defendants would introduce in an independent action in 1969 was largely available fourteen years ago when the original action was tried. Their failure to discover it and make skillful use of it demonstrates a lack of diligence justifying the invocation of the doctrine of laches.

The proposition that the doctrine of laches must be invoked here is further strengthened by the fact that prior to the 1954 trial, defendant Catherine Bowles and defendant William A. Lockwood formally abandoned their defense of this case, by filing the statement of October 5, 1954.[12] Each made an informed decision with the advice of competent counsel, not induced by fraud or deceit, that "on the basis of the evidence which is now available * * * that I cannot properly defend this action; * * * that I will not make any contest in regard to the issues raised herein, and that I shall not participate in any further proceedings had in this action."[13] By thus abandoning their defense, defendants relinquished their right to cross-examine the witness Blanche C. Lockwood at the trial, at a time when she was mentally competent and the other witnesses were alive.[14] Defendants give no valid excuse for their failure to act in 1954 or in 1965 other than the fact that a statement of Blanche Catherine Lockwood allegedly made to a doctor during a "lucid" moment, has only recently been divulged.

Defendants' inaction for these many years, while most of the facts now asserted by them were in their possession and during which time important witnesses have died or become incompetent, would result in great prejudice to plaintiffs were an independent action now permitted. Accordingly, we conclude that the doctrine of laches bars relief in an independent action under Rule 60(b) of the Federal Rules of Civil Procedure.

■ In addition to the doctrine of laches, there is another bar to the maintenance of an independent action under Rule 60(b). The primary allegation of defendants is that Blanche Catherine Lockwood testified falsely at the 1954 trial. Since it has been held that perjury is intrinsic fraud,[15] there can be no doubt that the alleged fraud in the instant case is of a purely intrinsic nature.[16] While there is some authority that intrinsic fraud will support an independent action under Rule 60(b),[17] the general view is that the fraud alleged must be extrinsic or collateral to the matter tried by the first court.[18] Perhaps the reasoning is that intrinsic fraud is discoverable through the ordinary processes of the trial itself, such as the right to cross-examine—a right forfeited by defendants in the instant case.[19] In any event, it is now settled that, in an independent action, a court will not set

11a. *See infra* notes 35–38 and accompanying text for a fuller discussion of this point.

12. *Supra* note 2.

13. *Id.*

14. The importance of this right is discussed *infra* at notes 35–38 and accompanying text.

15. Dowdy v. Hawfield, 88 U.S.App.D.C. 241, 189 F.2d 637, cert. denied, 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628 (1951);

Aetna Casualty & Surety Co. v. Abbott, 130 F.2d 40, 43–44 (4th Cir. 1942).

16. Dowdy v. Hawfield, *supra* note 15 at 242, 189 F.2d at 638.

17. *See* discussion, 7 Moore's Federal Practice ¶ 60.37[1] at 612–617.

18. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878).

19. *See infra* notes 35–38 and accompanying text.

aside a judgment because it was founded on perjured evidence or testimony.[20] The rationale for the rule was enunciated by the Supreme Court in 1878:

> That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reasons of the endless nature of the strife, than any compensation arising from doing justice in individual cases.[21]

Thus, an independent action will not lie in the instant case both because the doctrine of laches bars such an action and because the alleged intrinsic fraud will not support such an action in any event.

■ 3. Perhaps recognizing that relief for fraud was barred by the one year limitation period of Rule 60(b) (3) and that relief in an independent action was barred by the doctrine of laches and by the nature of the fraud alleged, defendants' primary argument has been that they are entitled to relief for "fraud upon the court" under Rule 60(b). There is no time limitation which would bar this court from granting such relief. Neither the one year limitation period [22]nor the doctrine of laches [23] bars the granting of relief for fraud upon the court.[24] A court may "at any time set aside a judgment for after-discovered fraud upon the court." [25]

■ Defendants make two allegations which they contend constitute "fraud upon the court": (1) An elaborate scheme to defraud defendants of their rights under the will of Henry A. Lockwood, said scheme—which allegedly began in 1910—having been perpetrated by William P. Lockwood, Blanche Catherine Lockwood and the plaintiffs in this action; and (2) the perjured testimony of Blanche Catherine Lockwood and the falsity of the hospital records introduced into evidence at the trial upon which the 1954 judgment is based. Defendants argue that if they are allowed to prove these two matters, they will have shown "fraud upon the court" within the meaning of Rule 60(b). This Court does not agree.

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud *inter partes*, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b) (3) or to the independent action.[26]

In addition, it has been said that "[i]n order to set aside a judgment or order because of fraud upon the court under Rule 60(b), * * * it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." [27] Courts

---

20. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878).

21. *Id.* at 68–69, 25 L.Ed. 93.

22. 7 Moore's Federal Practice ¶ 60.33 at 507.

23. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (The defrauded court should grant relief although the moving party is guilty of laches.).

24. *See* discussion, 7 Moore's Federal Practice ¶ 60.33 at 507–509.

25. Dausuel v. Dausuel, 90 U.S.App.D.C. 275, 276, 195 F.2d 774, 775 (1952).

26. 7 Moore's Federal Practice ¶ 60.33 at 512–13. Professor Moore's definition has been explicitly adopted by at least two courts of appeals in Kenner v. Commissioner of Internal Revenue, 387 F.2d 689, 691 (7th Cir. 1968) and Martina Theatre Corp. v. Schine Chain Theatres, Inc., 278 F.2d 798, 801 (2d Cir. 1960).

27. England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960).

have found fraud upon the court only where there has been the most egregious conduct involving a corruption of the judicial process itself. Examples are bribery of judges,[28] employment of counsel to "influence" the court,[29] bribery of the jury,[30] and the involvement of an attorney (an officer of the court) in the perpetration of fraud.[31] None of these are here alleged.

Applying these concepts of "fraud upon the court" to defendants' two allegations, we conclude that neither is an allegation of "that species of fraud * * *
which attempts to defile the court itself," [32] or "an unconscionable plan or scheme which is designed to improperly influence the court." [33] The alleged elaborate scheme to defraud would be simply fraud between the parties and could not be treated as fraud upon the court.[34] The allegation involving perjured testimony presents the more difficult question. But we believe the better view to be that where the court or its officers are not involved, there is no fraud upon the court within the meaning of Rule 60(b).[35] The possibility of

28. Root Refining Co. v. Universal Oil Products Co., 169 F.2d 514 (3rd Cir. 1948) cert. denied *sub nom.*, Universal Oil Products Co. v. William Whitman Co., 335 U.S. 912, 69 S.Ct. 481, 93 L. Ed. 444 (1949); Art Metal Works v. Abraham & Strauss, 107 F.2d 944 (2d Cir.), cert. denied, 308 U.S. 621, 60 S. Ct. 293, 84 L.Ed. 518 (1939).

29. Root Refining Co. v. Universal Oil Products Co., *supra* note 28.

30. 7 Moore's Federal Practice § 60.33 at 510 n. 45 and accompanying text.

31. Cf. Hazel-Atlas Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284, 162 A. L.R. 437 (1945). For a general discussion of this and the other examples cited *supra* in notes 28–30 and accompanying text, *see* 7 Moore's Federal Practice ¶ 60.33 at 510–11, where Professor Moore discusses the type of conduct constituting fraud upon the court:

> Let us, then, see what type of fraud may be properly classed as a fraud upon the court for situations where it is important to make a distinction. The more obvious, but fortunately rather rare, examples are: bribery or other corruption of the court, or a member of the court participating in the decision; *employment of counsel to "influence" the court, even though it is not shown that the court was influenced.* It would seem that bribery or other corruption of the jury, as distinguished from mere misconduct or the exercise of an improper influence, should also be treated as a fraud upon the court, for when the jury is used it is an integral part of the judicial machinery and the integrity of the court's judgment depends in part upon

the integrity of a non-corrupted jury. And, while less obvious, an abnegation by the judge of his judicial function, although no actual fraud was perpetrated, may well be a "legal" fraud by him upon the judicial institution. But *Hazel-Atlas* goes much further. In this case the court was not corrupted; and the extent to which the concocted article influenced the court was problematical. But granted that if the concoction and use of the article constituted a fraud upon the court and hence relief should be granted without a determination that the judgment was the product of this fraud, the fraud here involved differs little from that in *United States v. Throckmorton*, which the Court held would not support an independent action. One point of difference, although not stressed by the Court in *Hazel-Atlas*, is that an attorney of Hartford was implicated in perpetrating the fraud. We believe that this is important, for an attorney is an officer of the court. While he should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court. [Footnotes omitted.]

32. *See* 7 Moore's Federal Practice ¶ 60.33 at 512–13.

33. *See* England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960).

34. 7 Moore's Federal Practice ¶ 60.33 at 512–13.

35. *But see* Jungersen v. Axel Bros., Inc., 121 F.Supp. 712 (S.D.N.Y.), affirmed,

a witness testifying falsely is always a risk in our judicial process, but there are safeguards within the system to guard against such risks. The most basic of these is cross-examination of witnesses, a right which defendants waived in the instant case by not appearing at the 1954 trial and by relinquishing their right to defend. Defendants should not now, in the guise of "fraud upon the court," be allowed to question the credibility of a witness whom they declined even to cross-examine at the 1954 trial.[36]

Except in extraordinary circumstances such as those truly contemplated by the term "fraud upon the court" in Rule 60 (b), the law favors an end to lawsuits rather than a free reopening and retrial of them.[37] No such extraordinary circumstances exist in this case. Since defendants have not alleged facts sufficient to constitute "fraud upon the court," as that phrase has traditionally been understood,[38] this Court concludes that defendants are not entitled to relief

36. 217 F.2d 646 (2d Cir. 1954), cert. denied, 349 U.S. 940, 75 S.Ct. 784, 99 L.Ed. 1267 (1955). This Court is aware of one court of appeals decision which appeared to hold that perjury constituted fraud upon the court and that the judgment must therefore be set aside. Peacock Records, Inc. v. Checker Records, Inc., 365 F.2d 145 (7th Cir. 1966), cert. denied, 385 U.S. 1003, 87 S.Ct. 707, 17 L. Ed.2d 542 (1967). However, a careful reading of the case indicates that the court, in reaching its decision, was not relying on the "fraud upon the court" section of Rule 60(b). While the court did not indicate specifically the part of Rule 60(b) on which it was relying, there are two facts which lead us to believe that the court was saying only that perjury may be a basis for relief from judgment under Rule 60(b) (3) of the Federal Rules of Civil Procedure, the general fraud section, rather than the part of Rule 60(b) dealing with fraud upon the court. First, in *Peacock Records* the judgment allegedly based on perjured testimony was entered on September 21, 1964, and the Rule 60(b) motion to vacate was made on June 22, 1965—less than one year later. Thus, Rule 60(b) (3) relief was available to plaintiff, and there was no need to rely on any other part of the Rule. Secondly, the court in *Peacock Records* cited only one case in support of its holding that a judgment based on perjury must be set aside. That case was Atchison, Topeka & Santa Fe Ry. Co. v. Barrett, 246 F.2d 846 (9th Cir. 1957). The Court in *Barrett* made it clear that it was relying on Rule 60(b) (3) and (6) to afford relief, not on the section dealing with fraud upon the court. Atchison, Topeka & Santa Fe Ry. Co. v. Barrett, *supra* at 848 n. 4.

36. The relationship between vigorous cross-examination and a witness' credibility is emphasized in Instruction 31 of the revised standardized jury instructions, where the relevant factors in determining credibility are outlined to the jury. Instruction 31, Standardized Jury Instructions for the District of Columbia 23 (Revised ed. 1968). Had defendants subjected Blanche Catherine Lockwood to careful cross-examination at the 1954 trial, Judge Youngdahl, as the trier of fact, would have been able to consider Mrs. Lockwood's demeanor, her manner of testifying, her memory and recollection, whether she had any motive for not telling the truth, her interest in the outcome of the case, and all the other factors relevant to a test of credibility. Thus the perjury now alleged could have been discovered by the trial judge in 1954 had defendants diligently presented their defense. As has been aptly noted:

> Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all facts. A rule which would permit the reopening of cases previously decided because of error or ignorance during the progress of the trial would, in large measure, vitiate the effects of the rules of res judicata. —Restatement of Judgments § 126, comment a at 611 (1942).

37. Ackerman v. United States, 340 U.S. 193, 198, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."). *See also*, Note, Federal Rule 60(b): Finality of Civil Judgments v. Self-Correction by District Court of Judicial Error of Law, 43 Notre Dame Law. 98 (1967).

38. *Supra* notes 26–35 and accompanying text.

under Rule 60(b) of the Federal Rules of Civil Procedure.

■ 4. While defendants have not alleged facts sufficient to show fraud upon the court, they have alleged that their claim of fraud is now supported by new evidence, namely, the statement of Blanche Catherine Lockwood in a "lucid" moment, the depositions of Mary Stalcup and Joseph Capra, and a miscarriage record of an Atlantic City hospital. However, even assuming that this is evidence "which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)," [39] a concession we are unwilling to make, a motion for relief from judgment because of newly discovered evidence must be made not later than one year after the judgment.[40] Since the present motion is made some fourteen years after judgment, relief is not available under Rule 60(b) (2) of the Federal Rules of Civil Procedure.

## Conclusion

Defendants' motion for relief from judgment and for a trial on kinship must be denied. The foregoing discussion leading to this conclusion has necessarily contained a myriad of facts and a detailed analysis of all relevant parts of Rule 60(b) of the Federal Rules of Civil Procedure. But the underlying philosophy of that Rule and this opinion should not be lost sight of: The law favors an end to lawsuits, rather than a free reopening and retrial of cases previously decided.[41] Rule 60(b) has set up a very limited countervailing force which can be invoked when this established principle would lead to true and provable injustices. But the Rule sets up specific limitations of one year in the case of newly discovered evidence and simple fraud, and the doctrine of laches may intervene when fraud is alleged in an independent action under the Rule. The only instance in which Rule 60(b) allows for the reopening of lawsuits regardless of the passage of time is when there is an allegation of fraud upon the court, for the law favors discovery and correction of corruption of the judicial process even more than it requires an end to lawsuits. In the instance case, however, there is no allegation of bribery or corruption of or by judicial officers and no allegation which would otherwise touch upon the integrity of the judicial system. Therefore, we do not consider the alleged fraud and the perpetration thereof by perjury to be allegations of fraud upon the court within the meaning of the Rule.

After fourteen long years, it is time that this lawsuit finally come to rest. The mischief of reopening and retrying the case because of an allegation that a now incompetent woman testified falsely in 1954 "would be greater, by reasons of the endless nature of the strife" [42] than any remote possibility that greater justice will be done now than fourteen years ago when witnesses were alive and well.

## ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT AND FOR A TRIAL ON KINSHIP

Upon consideration of Defendants' Motion for Relief from Judgment and for a Trial on Kinship, the memoranda of points and authorities in support of and in opposition to said Motion, the argument of counsel in open court, the file and trial transcript in this case, and the file and transcript of hearing in Civil Action Number 712–65, and the Court having entered its Memorandum Opinion, it is this 3rd day of March, 1969,

Ordered that Defendants' Motion for Relief from Judgment and for a Trial on Kinship be and is hereby denied.

39. Fed.R.Civ.P. 60(b) (2).

40. Fed.R.Civ.P. 60(b). *See also* 7 Moore's Federal Practice ¶ 60.23[3].

41. Ackerman v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950);

United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878). *See also* Note, 43 Notre Dame Law. 98, *supra* note 37.

42. United States v. Throckmorton, *supra* note 40 at 68–69.