MARY E. MACDONALD vs. RICHARD G. MACDONALD.

Plymouth. January 8, 1990. - April 9, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Judge. Attachment. Fraud. Attorney at Law*, Deceit, Negligence. *Practice, Civil*, Disqualification of judge, Intervention.

There was no evidentiary basis for a Probate Court judge's conclusion that the attorneys for the parties to a civil contempt proceeding had committed a fraud on the court. [202]

A judge's entirely unsupported conclusion that the attorneys appearing in a civil contempt proceeding had committed a fraud on the court required that the judge be disqualified from further participation in the case. [202-203]

Where the record of a contempt proceeding to enforce alimony and support obligations established that a judge had allowed the plaintiff to attach certain real estate of the defendant; that, after the attachment was recorded, the defendant sold the real estate; and that the purchasers gave a mortgage on the property to a credit union whose attorney, due to inadvertence, failed to discover the attachment, the credit union was not entitled to intervene to litigate any issue concerning its attorney's error; however, it was to be permitted, on remand, to seek a hearing under G. L. c. 223, § 114, on the question whether the attachment was excessive or unreasonable. [203-205]

COMPLAINT for separate support filed in the Plymouth Division of the Probate and Family Court Department on August 12, 1982.

After review by this court, 401 Mass. 513 (1988), further proceedings were had before *James R. Lawton*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Willis A. Downs* for the plaintiff.

*Stephen J. Duggan* for Crescent Credit Union.

BY THE COURT. On April 12, 1988, approximately three months after our opinion in *MacDonald* v. *MacDonald*, 401

Mass. 513 (1988) (*MacDonald I*), the Probate and Family Court judge held a nonevidentiary hearing. On April 13, 1988, the judge entered a document dated March 24, 1988,[1] captioned, "The Court's motion sua sponte to vacate and revoke the motion allowing the execution . . . the judgment of contempt . . . and . . . the [modified] judgment of contempt . . . as the result of the fraud and deceit of the plaintiff and defendant and [their attorneys]." On motion of the plaintiff to summarize the evidence on which his findings were based, the judge issued amended findings and further amended findings. In his amended findings, the judge concluded "that there was in fact a willful and deliberate plan to use this Court for the personal enrichment of the plaintiff and defendant and their attorneys." The plaintiff appeals.[2] We transferred the case here on our motion. The plaintiff asserts that there is no evidentiary basis for the judge's findings of fraud on the court by the plaintiff, the defendant, and their attorneys. We agree with the plaintiff's assertions. "The record demonstrates overt acts by the judge reflecting great bias against [the parties and their attorneys] and substantial disregard for the mandate of this court." *Reserve Mining Co.* v. *Lord*, 529 F.2d 181, 185 (8th Cir. 1976). We therefore reverse the judge's order revoking the judgments and execution, and his order allowing motions to intervene and a motion to dissolve an attachment. We remand this case to the Administrative Justice of the Probate and Family Court for reassignment to another judge from a different county and for such further proceedings in another county as may be needed consistent with this opinion.

---

[1] The document, as originally issued, was dated March 24, 1985. On his own motion, the judge termed this a clerical error and changed the date to read "March 24, 1988." These findings make no reference to the April hearing. It was not until the judge issued amended findings on August 1, 1988, that the judge made any references to or quotes any statements made at the April hearing.

[2] The defendant filed notice of appeal but did not file a brief with this court.

We set forth the facts from *MacDonald I.* "The plaintiff filed a complaint for contempt in the Probate Court alleging [that] the defendant's arrearages in alimony and support payments under an order of September 13, 1982, total[ed] $5,908.31. On September 26, 1983, a probate judge authorized an attachment of certain of the defendant's real estate, which was recorded that day. The following day, September 27, 1983, the defendant sold the real estate. The purchasers gave a mortgage on the property to the Crescent Credit Union (credit union)." *Id.* at 513-514. The credit union's attorney[3] conducted a title search on the day *after* the closing and, in the attorney's own words, "due to inadvertence, [he] neglected to pick up said Attachment." The plaintiff's attorney subsequently informed the credit union's attorney of the attachment. "Upon learning of his error, the [credit union's] attorney filed a motion in the contempt case to dissolve the attachment. No motion to intervene was made, and no separate petition to dissolve the attachment was filed. The judge allowed the motion on the day it was filed without prior notice, although the plaintiff apparently was present and given an opportunity to be heard. The plaintiff then moved for reconsideration and stay pending appeal, but these motions were denied. The plaintiff thereupon appealed."[4] *Id.* at 514.[5]

In *MacDonald I*, we vacated the order dissolving the attachment and ordered it reinstated as of the date it originally was recorded. See *MacDonald I, supra* at 515. In support of

---

[3]The credit union's appellate counsel is not the attorney who conducted the title search.

[4]The judge stated that he dissolved the attachment in part "because [he] believed the plaintiff intended to pursue any future claim against her husband for support from [the credit union's attorney] and or his liability carrier and because [he believed] the plaintiff refused [his] assistance in seeking to [arrest] the defendant [pursuant to Mass. R. Dom. Rel. P. 4.3 (1989)]."

[5]Prior to our consideration of the appeal, the plaintiff, the defendant, and their attorneys signed a stipulation on January 9, 1984, which became a judgment of contempt. In September, 1986, the same parties signed a second stipulation which became a modified judgment of contempt. On October 31, 1986, the judge allowed the plaintiff's motion for execution in the sum of $32,490.67.

that result, we reasoned that, "[e]ven if there had been adequate notice, we doubt whether the probate judge could properly dissolve the attachment under G. L. c. 223, §§ 106 and 108 (1986 ed.), on the grounds urged by the credit union. Those provisions permit dissolution of an attachment upon a finding that all or part of the amount demanded in the original action was 'not justly due.' The probate judge made no such finding nor does the record disclose that evidence was introduced to support such a finding. Furthermore, decisions interpreting earlier statutes containing analogous provisions make clear that §§ 106 and 108 provide a remedy against attachments which are invalid or fraudulent." *Id.* at 514-515. We also said that "there was no allegation that the plaintiff's attachment was fraudulent or invalid within the meaning of the statute and in fact the judge made no finding to that effect. We can understand the judge's concern that the defendant not be unjustly enriched by the unfortunate error of the credit union's attorney. However, the question of the attorney's error was one which the credit union had 'no right to [raise] in this form of proceeding. It does not show that the debt was not justly due and owing, or that it was not then payable; and, therefore, they show no sufficient ground for vacating the attachment, on petition, by force of this statute.' " *Id.* at 515, quoting *Baird* v. *Williams*, 19 Pick. 381, 385-386 (1837).

After our opinion, the credit union again sought to intervene. The purchasers also filed a motion to intervene.[6] The plaintiff filed a motion to dismiss, a motion for stay of judgment, and a motion for recusal. The judge denied all of the plaintiff's motions, allowed both motions to intervene, and the credit union's motion to dissolve the attachment or, in the alternative, to reduce it, and on April 13, 1988, entered a document dated March 24, see note 1, *supra*, which vacated and revoked the two judgments and the execution "due to the fraud and deceit of the plaintiff and defendant." Subse-

---

[6]The purchasers have not filed a brief in this court in support of the judge's rulings.

MacDonald v. MacDonald.

quently, pursuant to the plaintiff's motion, the judge filed some amended findings.

The judge's findings and amended findings are set forth as follows. The judge found that the plaintiff, the defendant, and their attorneys "at some point in time following the real estate attachment incident on September 27, 1983," conspired together to recover any arrears in alimony payments from the credit union's attorney, his insurance carrier, the credit union itself, or the real estate "as the result of [the credit union's attorney's] negligence and failure to verify a [duly recorded] real estate attachment on the real estate of the defendant."

The judge found "that Attorney[s] Terzian and Downs [for the plaintiff in the domestic relations proceeding] and Attorney Littlefield [for the defendant in the domestic relations proceeding] conversed together frequently about this contempt but the three of them apparently chose to let the arrears grow to at least the size of the original real estate attachment which had issued on September 26, 1983, in the sum of $25,000.00. This Court assumes that that decision by the attorneys and their clients to sit on their hands and do nothing to require the defendant, Richard G. MacDonald, to live up to the orders of this Court was so that all of them could reap the rewards from [the credit union's attorney's] misfortune."[7]

The judge further found that "the plaintiff and defendant [and plaintiff's counsel] made representations to the court that were untrue, as subsequent lies and conduct on their part would confirm . . . with the intention that the court would rely upon them as being made in good faith and being true and in fact it was presented only to deceive this court and they did by such deceit perpetrate a fraud upon this

---

[7]There is no evidence or testimony disclosing the content of any conversations between the attorneys. The record does not disclose any basis for the attorneys to anticipate the failure of a title examiner to conduct a timely, nonnegligent title search.

court."[8] If the record had supported these findings then, in addition to setting aside the judgments, the judge should have referred the matter to the Board of Bar Overseers for disciplinary action. See S.J.C. Rule 3:09, Canon 3(B)(3)(b), as appearing in 382 Mass. 809 (1981); S.J.C. Rule 3:07, Canon 1, DR 1-102(A)(4), as appearing in 382 Mass. 769 (1981). The record does not support the judge's conclusion that there was a fraud on the court.[9]

---

[8]The judge also made the finding that the "defendant took the proceeds from that sale and refused to pay one penny to his wife under the court order . . . and now seeks, in concert with the plaintiff, to levy under an execution of this court and to force the sale of the property . . . . The defendant now seeks not only to enrich himself from the initial sale but now seeks to recover money again from these innocent purchasers by a scam that would put the greediest of men to shame." There is no evidence that the defendant participated in a "scam" to obtain more money from the purchasers. On the contrary, the evidence indicates that a reasonably competent, nonnegligent attorney should have found the attachment during the title search prior to the sale.

The credit union's attorney was negligent in two respects: he did not make a timely title search and, in the search that he did conduct, he failed to discover the attachment, which was recorded. In fact, the credit union's attorney never discovered the attachment. In this case, it was the plaintiff's attorney who brought the attachment to the attention of the credit union's title attorney. The credit union concedes that its attorney was negligent.

[9]The credit union's motions did not present any allegation or claim that the plaintiff, defendant, or their attorneys had committed fraud, much less fraud on the court, which implies corrupt conduct. Thus, prior to the issuance of the findings and order, the parties and their attorneys received no notice of any claim of fraud and no opportunity to be heard, to present testimony, to cross-examine witnesses, or to offer evidence. This violated the minimum requirements of due process.

"[N]otice of charges or reasons for deprivation of a protected interest must be provided before that deprivation can be effected." *Matter of Saab*, 406 Mass. 315, 323 (1989), citing *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). *Goldberg* v. *Kelly*, 397 U.S. 254 (1970). Although a court has the power to investigate whether a judgment has been obtained by fraud, "the usual safe-guards of adversary proceedings must be observed . . . . [A] court cannot deprive a successful party of his judgment without a proper hearing [or] . . . adequate opportunity to be heard." *Universal Oil Prods. Co.* v. *Root Ref. Co.*, 328 U.S. 575, 580 (1946). Due process requires an opportunity to present witnesses and documentary evidence and the right to confront and cross-examine adverse witnesses. Cf. *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972).

Fraud on the court is "only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. . . . In addition, it has been said that '[i]n order to set aside a judgment or order because of fraud upon the court . . . it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.' " *Lockwood* v. *Bowles*, 46 F.R.D. 625, 631 (D.D.C. 1969).[10] "Courts have found fraud upon the court only where there has been the most egregious conduct involving a corruption of the judicial process itself. Examples are bribery of judges, employment of counsel to 'influence' the court, bribery of the jury, and the involvement of an attorney (an officer of the court) in the perpetration of fraud." *Id.* at 631-632. There is no evidence in the record that the parties or their attorneys conspired to commit or actually perpetrated a fraud on the court under this standard. Without more, the documents and facts before the judge did not constitute fraud on the court.

It is clear from the findings that the judge again was concerned with the problem of the credit union's attorney's admitted negligence despite our statement in *MacDonald I*, *supra* at 515, that "the question of the attorney's error was one which the credit union had 'no right to [raise] in this form of proceeding.' " "Disregard of this court's mandate by a lawyer would be contemptuous; it can hardly be excused when the reckless action emanates from a judicial officer. It is one thing for a . . . judge to disagree on a legal basis with a judgment of this court. It is quite another to openly chal-

---

[10]The plaintiff argues that, even for fraud on the court, the one year time limitation in Mass. R. Civ. P. 60 (b) (3), 365 Mass. 828 (1974), barred the judge from revoking the judgments and execution because that action came more than one year after they had entered. We agree with credit union that there is no time limitation which would bar a court from granting relief for fraud on the court. See *Artco, Inc.* v. *DiFruscia*, 5 Mass. App. Ct. 513, 518 (1977). Cf. *Lockwood* v. *Bowles*, 46 F.R.D. 625, 631 (D.D.C. 1969).

lenge the court's ruling . . . . Our system of government is premised upon subservience to the rule of law. If a judge in the exercise of judicial power loses sight of these principles, the result is autocratic rule by lawless judicial action." *Reserve Mining Co.* v. *Lord*, 529 F.2d 181, 188 (8th Cir. 1976). "[T]he right to an impartial decision-maker is required by due process." *Arnett* v. *Kennedy*, 416 U.S. 134, 197 (1974) (White, J., concurring in part and dissenting in part). *Goldberg* v. *Kelly*, 397 U.S. 254, 271 (1970) (an impartial decision maker is essential).

Ordinarily, the question of disqualification is left to the judge's discretion. See *Commonwealth* v. *Gogan*, 389 Mass. 255, 259 (1983). Under S.J.C. Rule 3:09, Canon 3 (C) (1) (a), as appearing in 382 Mass. 809 (1981), a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where he has a personal bias or prejudice concerning a party. Although not requested by the attorneys involved, we conclude that the judge's decision to charge as well as decide that the attorneys engaged in disbarrable conduct based on their representation of clients is so biased as to require his disqualification in this case.[11] A judge "should not himself give vent to personal spleen or respond to a personal grievance." *Offutt* v. *United States*, 348 U.S. 11, 14 (1954).

On appeal, the credit union claims that it was entitled to intervene as a matter of right pursuant to Mass. R. Civ. P. 24 (a) (2), 365 Mass. 769 (1974), and cites cases applicable to that rule. The motion, however, was made pursuant to Mass. R. Civ. P. 24 (b), 365 Mass. 769 (1974), which provides in relevant part that "anyone may be permitted to intervene in an action: (1) when a statute of the Commonwealth confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Mass. R. Civ. P. 24 (*b*). We review the motions under case law and standards gov-

---

[11]The judge should remain disqualified from cases involving these attorneys for the foreseeable future.

erning rule 24 (b). "A judge has broad discretion in considering permissive intervention. *Corcoran* v. *Wigglesworth Mach. Co.*, 389 Mass. 1002, 1003 (1983). A judge's decision will not be upheld, of course, when its result is an error of law." *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass. 525, 538-539 (1986), and cases cited. We conclude that the judge erred as a matter of law. We have concluded, for the reasons stated herein, that the judge may not open the contempt proceeding for the purpose of litigating the question of the credit union's attorney's error. There is no pending action in which the credit union can intervene. Further, any other fraud claim is barred by the time limitation in Mass. R. Civ. P. 60 (b) (3), 365 Mass. 828 (1974).

The credit union filed a separate motion to dissolve the attachment or, in the alternative, to reduce it, which was allowed on April 13, 1988. Nothing in the record shows that the parties were heard on the motion or indicates the grounds on which the judge allowed it. We vacate the allowance of that motion and once again reinstate the attachment to be effective as of the date it was originally recorded.[12] Although the credit union may not intervene in the contempt case, because the judgments and execution remain closed pursuant to the time limitation in rule 60 (b), the motion remains pending for further proceedings on remand in accordance with G. L. c. 223, § 114. In hearing that motion, the credit union's attorney's error is not relevant. "[T]he question of the attorney's error was one which the credit union had 'no right to [raise] in this form of proceeding.'" *MacDonald I*, *supra* at 515.[13] The credit union may not relitigate that issue, but may seek a hearing as to the reasonableness of the

---

[12]On appeal, the credit union does not point to any facts which would warrant the attachment's dissolution or show that it was excessive. Further, it does not challenge the amount of the arrearage established by stipulation of the parties. There is no evidence in the record before us, however, whether the attachment was excessive or unreasonable. Thus, a remand is necessary. See G. L. c. 223, § 114 (1988 ed.).

[13]The credit union, of course, may recoup its losses in an action against its attorney for negligence.

attachment, an issue which was not considered in our prior opinion. See *MacDonald I, supra* at 515 n.3.[14]

*So ordered.*

---

[14]"Issue preclusion operates to prevent a party from relitigating an adjudicated issue essential to a valid and final prior judgment binding on that party." *Director of the Div. of Employment Sec.* v. *Mattapoisett,* 392 Mass. 858, 861 (1984). See *Cousineau* v. *Laramee,* 388 Mass. 859, 863 n.4 (1983); Restatement (Second) of Judgments § 27 (1982).